**Thomas CONNELLY, Jr.**

v.

**The UNIVERSITY OF VERMONT AND STATE AGRICULTURAL COLLEGE.**

**Civ. A. No. 4224.**

United States District Court
D. Vermont.

July 14, 1965.

Douglas C. Pierson, Burlington, Vt., for plaintiff.

Latham & Eastman, Burlington, Vt., for defendant.

GIBSON, District Judge.

This Court has before it the defendant's motion to dismiss the complaint (1) on the ground that the Eleventh Amendment of the United States Constitution precludes federal jurisdiction (2) on the ground that the required jurisdictional amount is not present, and (3) on the ground that the complaint fails to state a claim upon which relief can be granted. In the alternative the defendant has

moved for summary judgment under Rule 56, F.R.C.P. The plaintiff instituted this action praying that the defendant, University of Vermont and State Agricultural College, be ordered to reinstate the plaintiff to his former position as a student in its College of Medicine. Jurisdiction is founded on 28 U.S.C.A. § 1332.

The substance of the plaintiff's complaint is as follows: He is a third year student at the defendant's College of Medicine, and during the months of March through June of 1964, he was enrolled in a 12-week course in pediatrics-obstetrics. He states that due to illness he missed a portion of the course from May 11 to June 7, 1964, that he made up this lost time from July 1 to July 16, 1964, and that he believes his grades prior to his illness were 82 and 87 in the pediatrics and obstetrics parts of the course respectively. He further states that on July 17, 1964 he was advised that he had failed the pediatrics-obstetrics course and could not advance to his fourth year by reason of having failed 25 per cent or more of the major courses of his third year, this under a rule of the College of Medicine. The plaintiff then petitioned the College's Committee on Advancement for permission to repeat his third year's work. His petition was denied and he was subsequently dismissed from school. He alleges that his teacher during the period from July 1 to July 16, 1964 decided early in that period "that he would not give plaintiff a passing grade in said pediatrics-obstetrics course regardless of his prior work in the Spring and regardless of the quality of his work in said make up period." The plaintiff alleges that his work was of passing quality, and that his dismissal was wrongful, improper, arbitrary, summary and unjust. He prays that it be rescinded by the mandate of this Court.

The defendant contends first that this action is in reality a suit against a state by a citizen of another state and therefore there is no federal jurisdiction. Am. XI, U.S.Const. To support this contention defendant cites Larson v. Domestic and Foreign Commerce Corp. (1949) 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, State Highway Commission of Wyoming v. Utah Construction Co. (1929) 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262, and the recent case of Parden v. Terminal Ry. of Alabama State Docks Dept. (1964) 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233. None of these is controlling on the issue presented here. The Larson case was an action against the War Assets Administrator as an authorized agent of the United States. No claim of immunity as a governmental corporation was involved. In the Wyoming State Highway Commission case, the State of Wyoming was one of the parties to the contract in dispute and by its terms had become obligated to make payments for work performed by the contractor. And in the Parden case, it was held that Congress, in the exercise of its constitutional power to regulate interstate commerce, could subject a state owned railroad corporation to suit in a federal court under the Federal Employee's Liability Act. The issue there was whether state ownership of a railroad removed it from the operation of the FELA. The question of whether a public corporation is immune from suit in a federal court in a diversity case under the Eleventh Amendment was not involved in that case.

Defendant's status as a public corporation is established by No. 66, Section 1 of the Laws of Vermont, 1955, which provides that the University of Vermont and the Vermont Agricultural College is a body corporate with all the rights and powers incident to corporations. In Hopkins v. Clemson Agricultural College (1911) 221 U.S. 636, 31 S.Ct. 654, 55 L. Ed. 890, the South Carolina legislature established a Board of Trustees for Clemson College and provided that the Board of Trustees should be a corporate body with the right to acquire and hold property, to sue and be sued in its corporate name, and with other related corporate powers. In a suit for damages against the College, it was held that the Eleventh

Amendment did not bar a suit against Clemson for its corporate act of building for its corporate purposes a dyke which allegedly caused damage. See also Harrison Construction Co. v. Ohio Turnpike Commission, 6 Cir., 272 F.2d 337 (1959), Moss v. Calumet Paving Co., D.C., 201 F.Supp. 426 (1962), 1 Barron & Holtzoff, Federal Practice and Procedure, Section 54.1, p. 305. Accordingly, the defendant is not immune from suit in this Court under the Eleventh Amendment.

The defendant's contention that the required jurisdictional amount is not present is equally unavailing. In injunction actions, the amount in controversy is the value of the right to be protected or the extent of the injury to be prevented. 1 Barron & Holtzoff, Federal Practice and Procedure, Section 24, p. 111. The value of the right of a third year medical student to complete his fourth year and attain a degree which entitles him to practice the profession of medicine is worth, for purposes of determining the jurisdictional amount, in excess of $10,000.

The important question presented here is whether plaintiff's allegation that his instructor in the make up period from July 1 to July 16, 1964 failed him without proper attention to the quality of his work and on the basis of a decision made prior to the completion by plaintiff of his pediatrics-obstetrics course, states a cause of action under Rule 56, F.R.C.P. This Court is of the opinion that it does to a limited extent.

Where a medical student has been dismissed for a failure to attain a proper standard of scholarship, two questions may be involved; the first is, was the student in fact delinquent in his studies or unfit for the practice of medicine? The second question is, were the school authorities motivated by malice or bad faith in dismissing the student, or did they act arbitrarily or capriciously? In general, the first question is not a matter for judicial review. However, a student dismissal motivated by bad faith,

arbitrariness or capriciousness may be actionable.

In Barnard v. Inhabitants of Shelburne, 216 Mass. 19, 102 N.E. 1095 (1913) a high school student was dismissed for failure to attain a proper standard of scholarship. The trial court submitted the case to the jury on the theory that it had power to question whether in fact the plaintiff was delinquent in his studies, and the jury found that he was not. In reversing, the Supreme Judicial Court of Massachusetts said,

> So long as the school committee act in good faith their conduct in formulating and applying standards and making decisions touching this matter is not subject to review by any other tribunal. It is obvious that efficiency of instruction depends in no small degree upon this feature of our school system. It is an educational question, the final determination of which is vested by law in the public officials charged with the performance of that important duty.

The only issue for the jury, said the court, was "whether the exclusion of the plaintiff from the High School was an act of bad faith by the school committee."

This rule has been stated in a variety of ways by a number of courts. It has been said that courts do not interfere with the management of a school's internal affairs unless "there has been a manifest abuse of discretion or where [the school officials'] action has been arbitrary or unlawful," State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.W.2d 822, cert. den. 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1942), or unless the school authorities have acted "arbitrarily or capriciously", Frank v. Marquette University, 209 Wis. 372, 245 N.W. 125 (1932), or unless they have abused their discretion, Coffelt v. Nicholson, 224 Ark. 176, 272 S.W.2d 309 (1954), People ex rel. Bluett v. Board of Trustees of University of Illinois, 10 Ill.App.2d 207, 134 N.E.2d 635, 58 A.L.R.2d 899 (1956), or acted in "bad faith", Barnard v. Inhabit-

ants of Shelburne, supra, and see 222 Mass. 76, 109 N.E. 818 (same case).

██ The effect of these decisions is to give the school authorities absolute discretion in determining whether a student has been delinquent in his studies, and to place the burden on the student of showing that his dismissal was motivated by arbitrariness, capriciousness or bad faith. The reason for this rule is that in matters of scholarship, the school authorities are uniquely qualified by training and experience to judge the qualifications of a student, and efficiency of instruction depends in no small degree upon the school faculty's freedom from interference from other noneducational tribunals. It is only when the school authorities abuse this discretion that a court may interfere with their decision to dismiss a student.

In West v. Board of Trustees of Miami University, 41 Ohio App. 367, 181 N.E. 144 (1931), the plaintiff was dismissed from the University Normal School during her second term because she had not acquired enough credits. She appealed to the Academic Council of the University and then to the Faculty, the University's governing body. Thereafter she sought an injunction in the state court. After holding that the University rule providing for the number of credits required to advance with the student's class was valid and reasonable, the Court said,

> It is clear that the faculty, consisting of the teaching body of the institution, must be the tribunal, under the direction and controlling jurisdiction of the trustees, to pass upon the fitness of the students to continue their study of the courses selected and required.

In Dehaan v. Brandeis University, D.C., 150 F.Supp. 626 (1957), the plaintiff sought to enjoin the University from withholding a scholarship and from refusal to permit him to renew his registration. The University by a regulation set forth in its general catalogue, reserved "the right to sever the connection of any student with the university for appropriate reason." In dismissing for failure to state a claim upon which relief could be granted the Court stated:

> The problem of what constitutes an appropriate reason must clearly be left to those authorities charged with the duty of maintaining the standards and discipline of the school. (citations omitted). The court is in a poor position indeed to substitute its judgment for that of the university, particularly in this case which involved a graduate student enrolled in a very small department where the major part of instruction is given on an individual and personal basis.

The Court continued:

> The plaintiff's qualifications as a scholar and prospective teacher can be judged only by his professors who must have complete autonomy in their decision concerning the qualities of his work and his good character.

In Eddie v. Columbia University, 8 Misc.2d 795, 168 N.Y.S.2d 643 (1957), a candidate for the degree of doctor of philosophy at Columbia University whose dissertation had been rejected conditionally, with the proviso that he could revise it, sought a court order to reinstate him as a certified candidate for the degree, "and to have him finally examined on the basis of his dissertation as it now stands." The New York Supreme Court, after noting that it was not established that the rejection of the dissertation was arbitrary, capricious or unreasonable, said,

> The court may not substitute its own opinion as to the merits of a doctoral dissertation for that of the faculty members whom the University has selected to make a determination as to the quality of the dissertation.

██ The rule of judicial nonintervention in scholastic affairs is particularly applicable in the case of a medical school. A medical school must be the judge of the qualifications of its students to be granted a degree; Courts are not supposed to be learned in medicine and

are not qualified to pass opinion as to the attainments of a student in medicine. People ex rel. Pacella v. Bennett Medical College, 205 Ill.App. 324. In the instant case, the plaintiff Connelly alleges on information and belief

> * * * that, on the basis of his work in the Pediatrics-Obstetrics course during the Spring of 1964 and the continued 16 day make up period in July, 1964, he either received, or, in the alternative, should have received a passing grade therein and that his work in said course was comparable to and in many instances superior to the work of other students who received a passing grade in that course.

Whether the plaintiff should or should not have received a passing grade for the period in question is a matter wholly within the jurisdiction of the school authorities, who alone are qualified to make such a determination. The subject matter of this count of the complaint is not a subject for judicial review and this count of the complaint fails to state any claim for which relief can be granted.

▮ However, to the extent that the plaintiff has alleged his dismissal was for reasons other than the quality of his work, or in bad faith, he has stated a cause of action. He has alleged

> * * * that the agent of defendant's College of Medicine who taught plaintiff from July 1 to July 16, 1964 decided early in said period that he would not give plaintiff a passing grade in said Pediatric-Obstetrics course regardless of his prior work in the Spring and regardless of the quality of his work in said make up period.

The plaintiff has also alleged that the action of defendant in dismissing him was "summary and arbitrary." The allegation that the plaintiff was failed by an instructor who had made up his mind to fail him before he completed the course is equivalent, in this Court's opinion, to an allegation of bad faith, arbitrariness, and capriciousness on the part of the said instructor, and if proven, this Court would be justified in affording the plaintiff appropriate relief.

It follows from this that the defendant's motion for summary judgment under Rule 56, F.R.C.P. must be denied. Since there appear to be genuinely disputed issues of fact as to whether the defendant's conduct was arbitrary, capricious or in bad faith, the plaintiff is entitled to have these issues tried before this Court. 3 Barron & Holtzoff, Federal Practice and Procedure, Sect. 123, p. 101–102.

▮ It should be emphasized that this Court will not pass on the issue of whether the plaintiff should have passed or failed his pediatrics-obstetrics course, or whether he is qualified to practice medicine. This must and can only be determined by an appropriate department or committee of the defendant's College of Medicine. Barnard v. Inhabitants of Shelburne, supra, Eddie v. Columbia University, supra. Therefore, should the plaintiff prevail on the issue of whether the defendant acted arbitrarily, capriciously or in bad faith, this Court will then order the defendant University to give the plaintiff a fair and impartial hearing on his dismissal order.

## ORDER

Therefore it is ordered that the motions of defendant to dismiss and for Summary Judgment under Rule 56, F.R.C.P. be and hereby are denied. The case is to be set for hearing on the limited issue of whether the defendant University acted arbitrarily, capriciously, or in bad faith in dismissing the plaintiff.