**Robert Frank JANSEN, Plaintiff,**

v.

**EMORY UNIVERSITY, Defendant.**

**No. C76–732A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 1, 1977.

Mark J. Kadish, Garland, Nuckolls, Kadish, Cook & Weisensee, Atlanta, Ga., for plaintiff.

Gerald F. Handley, Lokey & Bowden, Atlanta, Ga., for defendant.

ORDER

MOYE, District Judge.

This is a diversity action between the plaintiff Frank Robert Jansen (Jansen), a citizen of Florida, and Emory University (Emory), a private university located in At-

lanta, Georgia. The plaintiff seeks relief for the alleged breach of a contract with Emory under which he attended Emory as a dental student. Before the Court are the defendant's motion for summary judgment and the plaintiff's motion for oral argument.

The Court finds this motion for summary judgment may be resolved without oral argument; plaintiff's motion for oral argument is accordingly DENIED.

The undisputed facts of this case are as follows: The plaintiff enrolled in the School of Dentistry of Emory University in 1971 as a candidate for the Degree of Doctor of Dental Surgery. Jansen's academic performance was poor. At the end of his freshman year he ranked 77 in a class of 91. At the end of his sophomore year he slipped to 88 out of 90. In each of his first two years Jansen was found guilty by the Emory Honor Council of violations of the Emory Honor Code. One conviction was for cheating on an exam and the other was for working on a bridge outside of class. At the end of his junior year he ranked 90 out of 92. He was not promoted and repeated his junior year in the 1974–75 academic year. Jansen was informed that his progress would be evaluated quarterly. At the end of this second junior year he had a junior class standing of 91 out of 106 and a three-year standing of 103 out of 106. Thereafter, in the spring of 1975, at a faculty meeting called to evaluate students for promotion a motion was made to drop Jansen from enrollment based upon his poor performance. The motion did not carry. Jansen was informed of the action by Dean Moulton of the School of Dentistry. He was promoted to his senior year on probation and was informed that he would be evaluated at the end of each academic quarter and would be dismissed if he did not show acceptable progress.

The last two years of the dental school curriculum place great emphasis on clinical practice. In clinical practice students work under faculty supervision and provide treatment to patients. According to Emory, clinical practice is the primary subject of the senior year and the student's grade therein is largely determinative of whether or not he graduates. Jansen was suspended from practicing in the Emory University School of Dentistry Clinic in the fall of 1975 for failure to follow clinic practices. Specifically, he assigned a patient to a hygienist for prophylaxis rather than performing such treatment himself. Following the incident he was advised that his standards, conscientiousness and professional integrity were in question. Dean Moulton again warned Jansen that he would be carefully evaluated by the faculty which would determine his future status as a student at Emory. On the date his suspension ended he returned to the clinic at which time he injured a patient. Jansen was given "D's" in his clinical course for the fall quarter and was placed on probation for the rest of the academic year. A Faculty Promotions Meeting considered and approved the advancement of Jansen from the fall to winter quarter. He received another "D" in clinical practice at the end of the winter quarter.

Under the grading system in effect at the School of Dentistry in 1975–76, the grade of "D" was a conditional failure and indicated that the student showed only a marginal understanding of the subject content and techniques and was not able to perform consistently at an acceptable level. If a student received grades below "C", his overall professional development, his academic performance and his technical skill and competence were reviewed by the faculty. At that time further enrollment or promotion would be based upon a two-thirds vote of the faculty.

At the conclusion of the winter quarter of 1976, a faculty meeting was held and all students on academic probation, including the plaintiff, were evaluated. Following a discussion of Jansen's academic and technical progress a motion was made and more than two-thirds of the faculty voted he be dropped from enrollment effective March 19, 1976. Jansen had submitted applications to take various dental boards to Dean Moulton. These applications which the

**1062**

Dean signed stated that Jansen expected to graduate in June 1976. Since his dismissal, the plaintiff has applied to and been rejected by every dental school in the United States, Canada and Puerto Rico.

On April 22, 1976, plaintiff filed his complaint in this Court. His motion for a preliminary injunction was heard on oral argument and was denied.

The parties appear to agree that the controlling case in this matter is *Mahavongsanan v. Hall*, 529 F.2d 448 (5th Cir. 1976). In that case a graduate student filed suit against various officials of the School of Education of Georgia State University and the University's Board of Regents, asserting that their arbitrary and capricious refusal to award her degree constituted a breach of contract and a denial of due process. The particular act complained of was the addition subsequent to plaintiff's enrollment in the program of a requirement of passing a comprehensive examination before graduation. Both the district and circuit courts recognized that the University had a contract with its students, the terms of which were expressed in the bulletins and catalogue of the University. The plaintiff in the present action argues that Emory too had a contract with its student, Jansen. The clause of this contract which was allegedly breached is contained in the February 1, 1975, Bulletin of Emory University: "Attendance at Emory is a privilege and not a right; however, no student will be dismissed without due process." Over these bare bones the plaintiff attempts to drape the entire panoply of due process rights developed by the Supreme Court in cases such as *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971), and *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Based on the assumption that the Emory contract meant to define "due process" in such a manner, the plaintiff argues that the process he received was deficient and thus constituted a breach. The underlying assumption is extravagant. It entirely disregards the fact that cases such as *Roth* and *Lopez* involve the actions of tax-supported institutions and thus implicate fundamental consideration of the relationship between citizen and state which are quite distinct from that shared by students and private institutions. There is no basis for suggesting either that Emory, a private university, is subject to the restraints imposed on state institutions or that it meant to so bind itself by contract.

Moreover, this assumption about the meaning of "due process" ignores specific provisions of the same contract. The procedure for dismissal followed in this action was that provided on page 16 of the Emory University Bulletin:

At the close of each teaching period and at any other time felt necessary, chairmen of various departments evaluate the progress of each student and his ability to meet the standards of the School of Dentistry. All decisions related to promotion, graduation and certain disciplinary measures come from recommendations by the faculty and the dean. At any time the president or the dean may terminate the enrollment or impose such measures as may be considered appropriate for improper conduct or for lack of sufficient progress.

Georgia law requires that courts interpret contracts as a whole. Ga.Code Ann. § 20–704(4). Such a construction suggests that the specific clause on page 16 controls and effectuates the general guarantee of "due process."

This Court's decision need not and should not be controlled by a mechanistic application of the law of contract. *Mahavongsanan* recognizes that educational contracts have unique qualities and are to be construed in a manner which leaves the school sufficient discretion to "properly exercise its educational responsibility." See also *Slaughter v. Brigham Young University*, 514 F.2d 622 (10th Cir. 1975). Pertinent to this action is the Fifth Circuit's statement: "The appellee's claim of a binding, absolute unchangeable contract is particularly anomalous in the context of training professional teachers in post graduate level work." The plaintiff's claim of such a contract is even

more anomalous in the context of the health care profession. In *Connelly v. The University of Vermont and State Agricultural College*, 244 F.Supp. 156 (D.Vt.1965), the court noted that the "rule of judicial nonintervention in academic affairs is particularly appropriate in the health care field. The court so held because "[a] medical school must be the judge of the qualifications of its students to be granted a degree; courts are not supposed to be learned in medicine and are not qualified to pass opinion as to the attainments of a student in medicine." 244 F.Supp. at 160–61. Courts are of course no more qualified in dentistry than in medicine and should not lightly undercut the "compelling need and very strong policy consideration in favor of giving . . . school officials the widest possible latitude in the management of school affairs." *Keys v. Sawyer*, 353 F.Supp. 936, 940 (S.D.Tex.1973).

 Plaintiff is correct in observing that the traditional rule of nonintervention in academic matters does not apply to review of disciplinary actions by educational institutions. *Mahavongsanan, supra*, at 449–50. He seeks to exploit the point by alleging that the academic decision to drop Jansen from enrollment was affected by previous disciplinary actions against him. During Jansen's first and second years of dental school, he was charged with and convicted of violations of the Emory Honor Code. It is alleged that the Honor Council procedures denied Jansen procedural due process and caused him to receive grades of "F" which ultimately contributed to his "academic" dismissal. Thus the plaintiff argues the dismissal was not *wholly* academic so as to be shielded from judicial scrutiny. This argument is unpersuasive. First, it presupposes that the same standards of procedural due process imposed on public schools in pioneering cases such as *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961), *cert. den.*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961), are required under the Emory contract's due process clause. More importantly, it ignores the fact that the undisputed facts show that Jansen's overall academic performance was desultory. The mere fact that some of his grades were based on Honor Council violations does not render suspect or reviewable the decision of the faculty. The plaintiff states only that his Honor Council grades of "F" materially affected his overall performance." As long as the decision to dismiss Jansen was essentially academic and neither alleged nor shown to be a mere pretense to punish him for disciplinary infractions, it is not subject to judicial review as a breach of the educational contract.

 The plaintiff has alleged that his dismissal was arbitrary and capricious and thus, even if based on academic considerations, reviewable as a breach of substantive due process guaranteed by the Emory contract. Nothing in the record supports this allegation. The undisputed facts indicate that dismissal on the basis of Jansen's academic record was by no stretch of imagination arbitrary and capricious. All particular acts complained of, such as his failing an examination given when he was ill, and the apparent refusal of Emory to give him the benefit of grades earned in clinical in his first junior year but retaken in his second, seem to be matters wholly between the student and school. As *Mahavongsanan* mandates, courts are not empowered to review the manner of grading students and the setting of degree requirements. "The federal judiciary should not adjudicate the soundness of a professor's grading system, nor make a factual determination of the fairness of the individual grades." *Keys v. Sawyer, supra*, at 940. No genuine issue of material fact is presented by various instances of alleged past misconduct on Emory's part where, as here, the record provides ample evidence of the dismissed student's scholastic ineptitude. Courts will not dissect on a per course or incident basis actions or inabilities which in aggregate lead to the conclusion of an academic incompetence. "The fact that the total of all infractions may aggravate the ultimate penalty does not require the courts to go back into the prior events and proceedings, which, when they took place, were not such as to consti-

tute an aggrievance in the constitutional sense." *Depperman v. University of Kentucky*, 371 F.Supp. 73, 75 (1974). The considerations favoring such judicial restraint are at least as compelling in the context of private universities.

█ Finally, there is no merit in the suggestion that Emory waived objections to the plaintiff's academic deficiency or is in any way estopped from dismissing him by having continued to promote Jansen or by certifying that he was expected to graduate in June 1976. There is no dispute that throughout his 1975–76 academic year he was aware that he was on academic probation. Jansen knew his progress would be scrutinized by the faculty, as indeed it was. In fact, there is no allegation that the procedure for the evaluation followed was not in accordance with that specified on page 16 of the Emory Bulletin. Having accepted these conditions and continued in school subject to them, he should not be heard to complain because the judgment was ultimately unfavorable to him. Respect for the discretion of those best qualified to make such judgments dictates that the university and not the federal courts should determine the qualification of students to continue their postgraduate education. This Court does not find the facts in any way suggestive of a situation where waiver and estoppel might apply. Even if they were, this Court's decision would be guided by the belief that rigid application of these concepts provides a no more acceptable vehicle for the interference with the "wide latitude and discretion afforded by the courts to educational institutions" than does traditional contract law. *Mahavongsanan, supra*, mandates as much.

There being no genuine issues as to any material fact, the defendant's motion for summary judgment is hereby GRANTED.