**Beth Walter HONADLE, Plaintiff,**

v.

**UNIVERSITY OF VERMONT and State Agricultural College, Defendants.**

No. 2:96–CV–292.

United States District Court, D. Vermont.

Sept. 20, 2000.

Michael Frederick Hanley, Plante, Hanley & Brannen, White River Junction, VT, for Beth Walter Honadle, plaintiffs.

Karen McAndrew, Jeffrey James Nolan, Dinse, Knapp & McAndrew, P.C., Pamela Heatlie, University of Vermont, Office of the General Counsel, Burlington, VT, for University of Vermont, and State Agricultural College, defendants.

### ORDER AND OPINION

SESSIONS, District Judge.

On September 3, 1996, Plaintiff Beth Walter Honadle brought this lawsuit against Defendants University of Vermont and State Agricultural College (collectively, "UVM") alleging that UVM's affirmative action hiring policies violated the Fourteenth Amendment of the United States Constitution; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq.; 42 U.S.C. § 1983; and the Vermont Fair Employment Practices Act, Vt. Stat. Ann. tit. 21, §§ 495 et seq. Second Amended Complaint, at 1 (Paper 83).

Plaintiff is a professor of Applied Economics at the University of Minnesota. In 1997 she unsuccessfully applied for the position of Chair of the Department of Community Development and Applied Economics at UVM. She alleges that the Asian–American woman who was offered the post was selected based on her race.

On September 10, 1999 UVM filed this Motion for Summary Judgment (Paper 104) arguing that the University is an arm of the State of Vermont and is therefore immune from suit under the Eleventh Amendment. Plaintiff opposed the motion on October 28, 1999 (Paper 109) and UVM filed a reply to Plaintiff's opposition on November 12, 1999 (Paper 111).

For the reasons set forth below, Defendant's Motion for Summary Judgment is **DENIED**.

### I. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Alexander & Alexander Services, Inc. v. These Certain Underwriters at Lloyd's, London, England,* 136 F.3d 82, 86 (2d Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The movant bears the burden of showing that no genuine issue of material fact exists. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d. Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)). All ambiguities must be resolved and all inferences from the facts drawn in favor of the non-moving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In sum, "[t]he court must draw all reasonable inference in favor of the non-moving party and only grant summary judgment for the moving party if no reasonable trier of fact could find in favor of the non-moving party." *Vermont Gas Systems, Inc. v. United States Fid. & Guar. Co.,* 805 F.Supp. 227, 231 (D.Vt.1992) citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### II. Facts

Because this motion does not raise the core issues in this suit—UVM's hiring procedure and the circumstances of Plaintiff's application—facts concerning those matters need not be recited here. The only facts relevant to the present motion are

those which pertain to the creation, funding, and operation of the University of Vermont. Those facts, taken in the light most favorable to the nonmoving party, are as follows.

In 1955, when the charters of the University of Vermont and the State Agricultural College were combined, the new entity was "constituted as a body corporate ... with all the rights and powers incident to corporations[.]" 1955 Vermont Laws No. 66 § 1. The University's charter empowered it to "hold and convey real and personal estate," *id.*, to sue and be sued, and to "assume, discharge, and perform all the debts, duties, trusts, and obligations" of the University of Vermont and the State Agricultural College. *Id.* at § 4.

UVM's property is not categorically exempt from property taxes. Rather, its property tax exemption depends on its status as an educational institution. Only UVM's property that is held "for· educational purposes" is exempt from property tax. 1955 Vermont Laws No. 66 § 15. UVM otherwise pays tax on property not directly related to its educational purposes.

UVM's Board of Trustees consists of twenty three members. Twelve are appointed by elected state officials (nine by the legislature and three by the governor). Eleven are independent, self-perpetuating members. 1955 Vermont Laws No. 66 § 2.

UVM maintains substantial financial and operational autonomy from the State of Vermont. In Fiscal Year 1998–99, the Vermont Legislature appropriated $28.3 million to UVM. 1997 Vermont Laws No. 147 § 176 (Adj.Sess.). This amounts to less than 10% of UVM's $290 million budget. UVM's "FY 00 Appropriation Request to the State of Vermont." Notwithstanding the slim majority of board appointments, neither the Governor nor the Vermont General Assembly has literal veto power over the actions of UVM.

Beyond the State's annual contribution to UVM's budget, there is no apparent link between the financial obligations of the school and the state. Although neither University's charter nor any provision of Vermont law provides that obligations of the University shall *not* be binding on the State, the University's 1955 charter authorized and directed the Board of Trustees to "assume, discharge, and perform all the debts, duties, trusts and obligations of UVM." 1955 Vermont Laws No. 66 § 4. UVM collects its own revenues, pays its own bills and reports its financial condition and results of operations in its own annual financial statements. Similarly, Vermont's annual "Information Statement" does not list the university's debts among its "Indebtedness" or·its "Contingent Liabilities." Bonds issued by the state financing agency, including those to facilitate university building construction projects, state that they "shall not be a debt of the state of Vermont nor shall the state be liable thereon, nor shall they be payable out of any funds other than those of the agency." 16 V.S.A. § 3857.

### III. Discussion

### A. The Law of Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.C.A. Const. Amend. XI. "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

Because the Eleventh Amendment exclusively contemplates immunity for States, the question of whether a state university such as UVM is immune to suit under the Amendment depends on whether UVM "is to be treated as an arm of the State partaking of the State's Eleventh

Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mt. Healthy School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

For over two decades federal courts have been actively refining the criteria used to determine whether the Eleventh Amendment protects any given quasi-governmental or government related entity. Public schools and state universities have been at the center of this process. In *Mt. Healthy* the Supreme Court held that a local secondary school district was not immune to a wrongful termination suit under the Eleventh Amendment. 429 U.S. at 287, 97 S.Ct. 568. The Court explained that "[u]nder Ohio law, the 'State' does not include 'political subdivisions' and 'political subdivisions' do include local school districts." *Id.* at 280, 97 S.Ct. 568.

Two years later the Court gave its Eleventh Amendment analysis detailed treatment in *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (*"Lake Country"*). There the Court denied immunity to the Tahoe Regional Planning Agency, an entity created by the States of California and Nevada, despite finding that the Planning Agency assumed a specific slice of both states' governmental responsibilities and acted under color of state law. *Id.* Justice Brennan reasoned,

> Unless there is a good reason to believe that [California and Nevada] structured the new agency to enable it to enjoy the *special constitutional protection* of the States themselves, and that Congress concurred in that purpose, there would appear to be no justification for reading additional meaning into *the limited language of the Amendment.*

*Id.* at 401, 99 S.Ct. 1171 (emphasis added). Such language indicates that the Court understands the immunity to be narrow indeed. Under *Lake Country,* courts must therefore be conservative when bestowing immunity on government related or quasi-governmental entities.

■ The *Lake Country* Court considered six factors in determining whether the Planning Agency was entitled to protection: (1) how the entity is described in its documents of creation; (2) how the governing members of the entity are appointed; (3) how the entity is funded; (4) whether the entity's function is traditionally one of local or state government; (5) whether the state has a veto power over the entity's actions; and (6) whether the entity's obligations are binding on the state. *Mancuso v. New York State Thruway Authority,* 86 F.3d 289, 293 (2d Cir. 1996).

These factors make it abundantly clear that extending Eleventh Amendment immunity is highly contingent on the specific circumstances of each case. Nowhere is this more true than when considering the Eleventh Amendment status of state universities. "Each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances." *Kovats v. Rutgers, The State University,* 822 F.2d 1303, 1312 (3d Cir.1987) (quoting *Soni v. Board of Trustees of the University of Tennessee,* 513 F.2d 347, 352 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976)) (denying immunity to Rutgers, the state university of New Jersey). However fact contingent the analysis may be, courts are not necessarily limited to the six *Lake Country* factors, *see, e.g., Kovats,* 822 F.2d at 1309 (considering the university's independent bookkeeping practices), nor are courts required to weigh the six factors equally. *Id.* (giving greater weight to the financial relationship between New Jersey and Rutgers than other *Lake Country* factors).

"When indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide." *Hess v. Port Authority Trans–Hudson Corporation,* 513 U.S. 30, 47, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994)

Those twin reasons for being are (1) integrity of the state and (2) protection of the state fisc. *Id.* at 39, 115 S.Ct. 394.

The Second Circuit adopted the *Lake Country* factors in *Feeney v. Port Authority Trans–Hudson Corporation,* 873 F.2d 628, 630–31 (2d Cir.1989). *See also Mancuso,* 86 F.3d at 293. Likewise, the Federal District Court of Vermont adopted and applied them in *Richards v. State's Attorneys Office,* 40 F.Supp.2d 534 (D.Vt.1999) (granting immunity to the Vermont State's Attorney Office), additionally noting, "[w]e remain mindful of the Supreme Court's emphasis [in *Hess* ] that 'the vulnerability of the State's purse [is] the most salient factor." *Id.* (quoting *Hess,* 513 U.S. at 48, 115 S.Ct. 394).

### 2. Application to UVM

■ Under *Lake Country* and its progeny, UVM is not entitled to summary judgment on the question of Eleventh Amendment immunity. Construing the facts as this Court must under the summary judgment standard, four of the six *Lake Country* factors support the conclusion that UVM is not entitled to Eleventh Amendment immunity. One of those four factors in particular, the school's system of funding, demonstrates UVM's independence from the state with particular clarity.

First, UVM's documents of creation specify that the school is formed as a body corporate with the power to sue and be sued as well as own property. Such powers indicate substantial independence from the state. This Court has already observed as much in the only case addressing UVM's Eleventh Amendment status. *Connelly v. University of Vermont and State Agricultural College,* 244 F.Supp. 156, 158 (D.Vt.1965) (holding that UVM's status as a body corporate disqualifies it from Eleventh Amendment immunity). Although this decision came down prior to *Lake Country,* Defendant is

incorrect in arguing that *Connelly* is overly narrow, inconsistent with modern case law, and therefore inapplicable. Reply, at 19–22. *Lake Country* did not invalidate corporate status as a consideration. Rather, it broadened the list of additional criteria for evaluation, thereby reinforcing the idea that Eleventh Amendment immunity should be evaluated on a case by case basis. How an entity is described in its originating documents is not only a valid but important criterion for evaluating Eleventh Amendment immunity. In this case, the language contained in the relevant statutes cuts decidedly against granting immunity to UVM. Second, UVM's almost entirely private funding stream suggests, even more strongly, that the school does not operate as an arm of the state. Although not for the purposes of Eleventh Amendment analysis, this Court has already stated that "UVM is primarily financially independent." *Sprague v. University of Vermont,* 661 F.Supp. 1132, 1135 (D.Vt.1987). Third, the State of Vermont does not have veto power over the actions of UVM. Defendant's argument that ostensible veto power exists by virtue of the fact that the legislature may amend the university's charter is unconvincing. The power to appoint a majority of board members is not the functional equivalent of express veto power.[1] Fourth, consistent with UVM's almost entirely independent financing system, is it quite clear that the university's obligations are not binding on the State of Vermont.

The last remaining *Lake Country* factor, whether the primary function of the subject entity was traditionally a state or local one, does not seem pertinent to the present analysis. In *Lake Country,* the state/local distinction was used to evaluate land use, which the Court noted was a function traditionally performed by local

---

1. Indeed, the only consideration that suggests that Vermont has any control over the university is the ratio of state appointed to independent the board members. By the numbers, the Board is controlled by a majority of state appointed individuals. Yet it is far from clear that this translates in practice into any kind of governmental supervision, by veto or otherwise.

governments rather than on a statewide basis. 440 U.S. at 402, 99 S.Ct. 1171. Higher education, while often provided by state government, is not traditionally private or public. Both public and private institutions of higher education exist in abundance in this country. Defendant concedes that to the extent that UVM has been government funded, it has been funded at the state rather than local levels. However, this is not a compelling point in this analysis.

The question of UVM's. Eleventh Amendment immunity is therefore not a close call at summary judgment. Under the circumstances, UVM appears—in both its creation and its everyday functioning— to be an entity independent from the State of Vermont. It has its own funding, makes its own decisions, and is responsible for its own liabilities. Under prevailing law, it may not therefore claim arm of the state status.

Because the *Lake Country* analysis is so decisive in this case, this Court need not take the additional step of considering effects on state integrity and protection of the state fisc suggested by the Supreme Court in *Hess*. However, even if the above six factor analysis were not so decisive, UVM's nearly complete operational and financial autonomy establishes beyond doubt that UVM's susceptibility to suit in federal court in no way threatens Vermont's integrity or its finances.

## IV. Conclusion

For all of the reasons above, Defendant's Motion for Summary Judgment is **DENIED.**