GUIDRY, J.
|2In this breach of contract action, plaintiff, Sheila Guidry, appeals from a judgment of the trial court, granting summary judgment in favor of defendants, Our Lady of the Lake Nurse Anesthesia Program through Our Lady of the Lake College (OLOL) and Yvonne Bahlinger, and dismissing Ms. Guidry’s claims against them with prejudice. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
Ms. Guidry applied for admission to OLOL’s nurse anesthesia program, seeking a masters of science degree in nurse anesthesia, in November 2007 and was accepted for admission to the 2008 class. The nurse anesthesia program is a full-time program; however, in the spring of 2009, OLOL permitted Ms. Guidry to take a reduced course load, and she subsequently joined the 2009 class.
Thereafter, OLOL provided Ms. Guidry with a copy of the Nurse Anesthesia Student Handbook, and on August 21, 2009, Ms. Guidry signed a form acknowledging that she received and read the handbook.[1] This handbook set forth a description of the anesthesia program, an overview of the program, and policies for the academic and clinical programs. Particularly, with regard to termination, the handbook provides, in part:
A student will be terminated from the anesthesia program . for the following reasons:
• A grade lower than a C in any course in the anesthesia program
• 2 C’s in the anesthesia program
• Failure to maintain a cumulative 3.0 GPA in the anesthesia curriculum
• Failure of any clinical practicum as evidenced by the clinical evaluations and probation conferences ....
| sThe student handbook also provides, in the section related to grading:
Students receive a “Pass” or “Fail” grade for clinical practicum. Credits earned are counted toward the total number of credits required for graduation, but are not used in a student’s grade point average, as per College policy. A “Fail” grade in any of the Nurse Anesthesia Clinical Practicum I-VII will result in termination from the Program. The student may appeal the grade according to the Grade Appeal Policy. [Emphasis added.]
In the Spring of 2010, Ms. Guidry enrolled in Clinical Practicum I,[2] which was designated as a pass/fail course, under the direction of Yvonne Bahlinger. Ms. Gui- *212 dry was provided with a copy of the course syllabus, detailing course objectives, course requirements, and grading. Particularly, the syllabus stated that although Clinical Practicum I is a pass/fail course; a level of 80% achievement in all required areas will be expected to successfully pass the course. Thereafter, Ms. Guidry received a 70% on her midterm exam, one of the required areas of the course. Ms. Bahlinger permitted Ms. Guidry, as well as several other students who did not meet the minimum achievement level on the midterm, to continue in the course. Ms. Bahlinger then averaged the final exam and the midterm exam on an equally-weighted basis. However, when Ms. Gui-dry failed to attain an 80% upon averaging her midterm exam and final exam, Ms. Bahlinger gave Ms. Guidry a failing grade for Clinical Practicum I. Thereafter, OLOL dismissed Ms. Guidry from the program.
Ms. Guidry submitted a grade appeal and a program dismissal appeal, asserting that exam answers were incorrectly marked wrong and that there was no grading rubric posted in advance of the midterm exam to clearly state the amount of points associated with the three categories tested, thereby affecting her grade point average. After review of the grade appeal, the Dean of Nursing concurred that Ms. Guidry received a score of 78, which is a failing grade. Additionally, the Nursing Admissions, Progression, and Graduation Committee (APG) conducted a hearing on |4Ms. Guidry’s program dismissal appeal and ultimately denied the appeal on May 25, 2010.
Ms. Guidry then filed complaints with the United States Department of Education, Office of Civil Rights and the Council on Accreditation, the council responsible for accreditation of the nurse anesthesia program, both of which were denied.
Thereafter, Ms. Guidry filed a petition for declaratory judgment and for damages, naming OLOL and Ms. Bahlinger as defendants. Ms. Guidry asserted that the defendants failed to adhere to the provisions of the student handbook and syllabus in calculating Ms. Guidry’s final grade and in terminating Ms. Guidry from the nurse anesthesia program, which constituted a breach of contract. Ms. Guidry further alleged that the defendants were in bad faith.
OLOL and Ms. Bahlinger each filed a motion for summary judgment, asserting that in the education field, courts universally reject claims that seek review of a school’s academic decisions. Further, they asserted that not only does the student handbook acknowledgment not create a contract with OLOL, but that even if it did form a contract, OLOL and Ms. Bahlinger did not engage in any action that would constitute a breach of any obligation to Ms. Guidry.
Following a hearing on the defendants’ motions for summary judgment, the trial court signed a judgment granting both motions and dismissing Ms. Guidry’s claims against them with prejudice. Ms. Guidry now appeals from this judgment, asserting that the trial court erred in finding that there was no contract established between OLOL and Ms. Guidry and in finding that, even if there was a contract, Ms. Guidry failed to prove any breach that caused her any damage.
IfiDISCUSSION

Standard of Review

A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact. Johnson v. Evan Hall *213 Sugar Cooperative, Inc., 01-2956, p. 8 (La.App. 1st Cir.12/80/02), 836 So.2d 484, 486. A motion for summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(G)(2).
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen | fionly in light of the substantive law applicable to the case. Smith v. Kopynec, 12-1472, p. 4 (La.App. 1st Cir.6/7/13), 119 So.3d 835, 837.

Breach of Contract

It is generally held across the jurisdictions of the United States that the basic legal relation between a student and a private university or college is contractual in nature. Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir.1992); see also Babcock v. New Orleans Baptist Theological Seminary, 554 So.2d 90, 95-96, writ denied, 558 So.2d 607, cert. denied, 498 U.S. 880, 111 S.Ct. 214, 112 L.Ed.2d 173 (1990).[3] The terms of the contract are rarely delineated; however, it is generally accepted that the catalogs, bulletins, circulars, and regulations of the university made available to the student become part of the contract. See Amaya v. Brater, 981 N.E.2d 1235, 1240 (Ind.App.2013); Ross, 957 F.2d at 416; but see Miller v. Loyola University of New Orleans, 02-0158, pp. 9-10 (La.App. 4th Cir.9/30/02), 829 So.2d 1057, 1062, writ denied, 02-3093 (La.3/14/03), 839 So.2d 38.[4] A contract be *214 tween a private institution and a student confers duties upon both parties, which cannot be arbitrarily disregarded and may be judicially enforced. Ross, 957 F.2d at 416. However, in order to state a claim for breach of contract, the plaintiff must do more than merely allege that a promise was inadequately performed; a |7plaintiff must point to an identifiable contractual promise that the defendant failed to honor. See Ross, 957 F.2d at 417, Such a claim does not require an inquiry into the nuances of educational processes and theories, but rather, involves an objective assessment of whether the institution made a good faith effort to perform on its promise. Ross, 957 F.2d at 417.
Nevertheless, courts have declined to apply contract law rigidly in these cases, when doing so would result in overriding a purely academic determination. Amaya, 981 N.E.2d at 1240; Kashmiri v. Regents of the University of California, 156 Cal.App.4th 809, 825, 67 Cal.Rptr.3d 635, 646 (Cal.App. 1st Dist.2007). When courts are asked to review the substance of genuinely academic decisions, they should show great respect for the faculty’s professional judgment and should not override that judgment unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. Regents of the University of Michigan v. Ewing, 474 U.S. 214, 225, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985). Determinations concerning a student’s qualifications rest in most cases upon the subjective professional judgment of trained educators, who are the best judges of their student’s academic performance and his or her ability to master the required curriculum. See Mittra v. University of Medicine and Dentistry of New Jersey, 316 N.J.Super. 83, 91, 719 A.2d 693, 697 (App.Div.1998) (citing Board of Curators of the University of Missouri v. Horowitz, 435 U.S. 78, 85 n. 2, 98 S.Ct. 948, 953, 55 L.Ed.2d 124 (1978)); see also Amaya, 981 N.E.2d at 1240. As such, school authorities have absolute discretion in determining whether a student has been delinquent in his studies. Connelly v. University of Vermont and State Agricultural College, 244 F.Supp. 156, 160. This is the case especially regarding degree requirements in the health care field, when the conferral of a degree places the school’s imprimatur upon the student as qualified to pursue his chosen profession. Doherty v. Southern College of Optometry, 862 F.2d 570, 576 (6th Cir.1988), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).
Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking. Horowitz, 435 U.S. at 90, 98 S.Ct. at 955. Furthermore, the more specialized and individualized the educational regime, the more unique the student/faculty relation *215 ship becomes and the more deference an institution should be given when dismissing a student for academic reasons. Beauchene v. Mississippi College, 986 F.Supp.2d 755, 775 (S.D.Miss.2013) (citing Horowitz, 435 U.S. at 90, 98 S.Ct. at 955).
Notwithstanding the strong public policy of judicial restraint in disputes involving academic standards, the decisions of educators are not completely immune from judicial scrutiny, and courts will intervene if an institution exercises its discretion in an arbitrary or irrational fashion. See Olsson v. Board of Higher Education of City of New York, 402 N.E.2d 1150, 49 N.Y.2d 408, 413-414, 426 N.Y.S.2d 248 (N.Y.1980); see also Babcock, 554 So.2d at 97-98; Connelly, 244 F.Supp. at 159-160; Gati v. University of Pittsburgh of the Commonwealth System of Higher Education, 91 A.3d 723, 731 (Pa.Super.2014).
In the instant case, Ms! Guidry asserts that a contract was formed with OLOL when it presented her with a copy of the student handbook and required her to sign and return an acknowledgement that she would be held accountable for the information contained therein. As such, Ms. Guidry asserts that OLOL was bound to adhere to the terms of the student handbook, as well as the course syllabus, in determining her grade in Clinical Practicum I and in deciding to terminate her from the nurse anesthesia program.
|9The student handbook provides, in the section entitled “Student Rights and Responsibilities,” that “[i]t is the, right of the students to have clarification of grading policies for each course.” Additionally, the handbook provides that “students have the right to have printed material available to them that specifically states the. policies, procedures, and standards of behavior that could affect students’ standing in school.” By enrolling in Clinical Practicum I, Ms. Guidry was provided with a copy of the course syllabus, which detailed the course description, objectives, outline, requirements, and grading scale. With regard to grades, the syllabus divided the course into eight categories, including anesthesia management plans, room setup, machine check off, midterm assessment, written final exam, simulation modules, participation EBP journal club, and LANA spring meeting, with each category graded as either satisfactory or unsatisfactory. The syllabus further states that although Clinical Practicum I is a pass/fail course, an achievement of 80% in all required areas is expected to successfully pass the course.
According to Ms. Guidry, the course syllabus does not require her to achieve an 80% in “each” required area, but rather, requires that she achieve an 80% based on a cumulative assessment of the entire course. As such, Ms. Guidry asserts that although she received a 70% on her midterm exam, her cumulative grade for Clinical Practicum I was above the required 80%. OLOL, however, contends that a level of at least 80% is required in each of the designated course areas. Ms. Bahlinger acknowledges that rather than failing Ms. Guidry at midterm for failing to achieve the minimum level of 80%. on her midterm exam, she permitted Ms. Guidry, as well as five other students, to continue in the course and averaged their grades on their final exams with their grades on their midterm exams. Ms. Bahlinger deviated from the course syllabus so as to afford these students, including Ms. Guidry, an opportunity to pass Clinical Practicum I, despite their poor performance on the midterm exam. However, when Ms. Bahlinger averaged Ms. Guidry’s midterm exam grade with her imfinal exam' grade, Ms. Guidry still failed to achieve the required *216 80%. As such, Ms. Bahlinger gave Ms. Guidry a failing grade for Clinical Practicum I.
At the heart of Ms. Guidry’s breach of contract claim is her assertion that Ms. Bahlinger improperly determined her grade for Clinical Practicum I. As such, even if we were to find that OLOL’s student handbook and course syllabus delineated specific contractual promises regarding the calculation of grades, a determination as to the interpretation and/or propriety of Ms. Bahlinger’s grading system and her calculation of Ms. Guidry’s grade are academic decisions confined to the professional judgment of OLOL’s faculty and are not within the authority of a court to review, absent a showing that the determination was arbitrary or capricious. See Jansen v. Emory University, 440 F.Supp. 1060, 1063 (N.D.Ga.1977), aff'd, 579 F.2d 45 (5th Cir.1978); Connelly, 244 F.Supp. at 160.
From our review of the record, we find that Ms. Guidry has failed to present any evidence that Ms. Bahlinger’s determination of her grade was arbitrary or capricious. Ms. Guidry asserts that her test paper was “repeatedly marked down” and that she was being targeted based on her involvement in a prior cheating scandal. However, the record is devoid of any evidence that the changes made to the scoring of individual test answers on Ms. Gui-dry’s midterm exam were arbitrary and capricious.[5] The record demonstrates that Ms. Bahlinger made a change to the scoring of an individual test answer on the written portion of Ms. Guidry’s midterm exam; however, this change, which was made for the entire class, resulted in Ms. Guidry receiving additional credit for an answer that had previously been marked |) pncorrect. Further, although the scoring for two sections on the practicum portion of the midterm shows alterations, the grading rubric and the rationale for the score in these sections are detailed on the exam.
Likewise, there is no support in the record for Ms. Guidry’s assertion that Ms. Bahlinger deliberately manipulated the scoring of Ms. Guidry’s test answers. Ms. Guidry’s basis for such an assertion is that Ms. Bahlinger was retaliating against Ms. Guidry based on her involvement in a prior cheating scandal at OLOL. However, there is no evidence in the record that Ms. Bah-linger harbored any ill will against Ms. Guidry based on her involvement in the scandal, nor that Ms. Bahlinger otherwise had any improper motive in assessing Ms. Guidry’s grade for Clinical Practicum I. As such, because Ms. Guidry failed to establish that Ms. Bahlinger was arbitrary and capricious in determining her grade in Clinical Practicum I, we find no basis upon *217 which to override Ms. Bahlinger’s professional judgment. See Ewing, 474 U.S. at 225, 106 S.Ct. at 513.[6]
The student handbook provides that “[sjtudents receive a ‘Pass’ or ‘Fail’ grade for clinical practieum ... [and a] ‘Fail’ grade in any of the Nurse Anesthesia Clinical Practieum I-VII will result in termination from the Program.” After receiving a failing grade in Clinical Practieum I, Ms. Guidry was terminated from OLOL in accordance with the aforementioned policy. Ms. Guidry was afforded an opportunity not only to appeal her grade in Clinical Practieum I, but also to appeal her dismissal from the nurse anesthesia program. The Dean of Nursing reviewed Ms. Gui-dry’s grade appeal, issued specific findings on each issue raised by Ms. Guidry, and ultimately determined that Ms. Guidry failed to achieve a passing grade for Clinical | ^Practieum I. Additionally, an APG committee conducted a hearing on Ms. Guidry’s program dismissal appeal and, after serious consideration, issued a decision denying her appeal.
Accordingly, from our review of the record, we find that OLOL complied with its dismissal and appeal procedures, and Ms. Guidry has failed to present any evidence that OLOL’s academic determination to dismiss Ms. Guidry based on her failing grade in Clinical Practieum I was arbitrary and capricious.[7] As such, we find no error in the trial court’s judgment granting summary judgment in favor of OLOL and Ms. Bahlinger and dismissing Ms. Guidry’s claims against them with prejudice.
*218 CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court. All costs of this appeal are assessed to Sheila Guidry.
AFFIRMED.

. Ms. Guidry had also previously signed a form on August 15, 2008, acknowledging that she received and read the student handbook.

. The particular course number for Clinical Practicum I is referenced in the record as ANES-5711. However, for ease of discussion, we refer to the course at issue as Clinical Practicum I.

. See also Amaya v. Brater, 981 N.E.2d 1235, 1240 (Ind.App.2013); Doherty v. Southern College of Optometry, 862 F.2d 570, 576-77 (6th Cir.1988), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989); Zumbrun v. University of Southern California, 25 Cal.App.3d 1, 10, 101 Cal.Rptr. 499 (Cal.App. 2nd Dist.1972) and cases cited therein; Jallali v. Nova Southeastern University, Inc., 992 So.2d 338, 342 (Fla. 4th DCA 2008); Beauchene v. Mississippi College, 986 F.Supp.2d 755, 769 (S.D.Miss.2013); Olsson v. Board of Higher Education, 402 N.E.2d 1150, 49 N.Y.2d 408, 414, 426 N.Y.S.2d 248 (N.Y.1980); Gati v. University of Pittsburgh of the Commonwealth System of Higher Education, 91 A.3d 723, 730-731 (Pa.Super.2014); Alsides v. Brown Institute, Ltd., 592 N.W.2d 468, 472 (Minn.App.1999).

. In Miller, an educational malpractice case contesting the quality of the education provided, the fourth circuit determined, in evaluating the plaintiff’s detrimental reliance claim, that course descriptions are not contractual provisions that bind a school to teach exactly *214 what is written in the description. We disagree with the fourth circuit's broad characterization that course descriptions are not binding contractual provisions. Rather, we find that the proper characterization is that even if course descriptions contain an identifiable contractual promise, given the judicial deference afforded to educational institutions to manage their curricula, such a promise will not be enforced absent a showing that the academic institution’s determination was arbitrary or capricious. See Kashmiri v. Regents of the University of California, 156 Cal.App.4th 809, 825, 67 Cal.Rptr.3d 635, 646 (Cal.App. 1st Dist.2007); Mahavongsanan v. Hall. 529 F.2d 448, 450 (5th Cir.1976); Beauchene v. Mississippi College, 986 F.Supp.2d 755, 773 (S.D.Miss.2013).

. Ms. Guidry also asserts on appeal that the student handbook provides that every student has the right to due process in the determination of course grades, and that due process rights are defined, in part, as “[t]he provision of instructions and/or a grading rubric on exams and other assignments!/] ” According to Ms. Guidry, OLOL violated this portion of the handbook by failing to provide a grading rubric on the Clinical Practicum I course exams and this failure enabled Ms. Bahlinger to arbitrarily grade Ms. Guidry’s exams. However, as we have discussed supra, academic institutions are afforded a great deal of deference in their determinations regarding the assessment of a student’s academic performance, and absent a showing that the determination was arbitrary or capricious, courts should refrain from reviewing those determinations. See Connelly, 244 F.Supp. at 160. Because we find no evidence in the record to support that Ms. Bahlinger’s determination of Ms. Guidry's grade in Clinical Practicum I was arbitrary and capricious, we find this argument to be without merit.

. Additionally, we note that the record demonstrates that Ms. Guidry has a history of struggling academically in the nurse anesthesia program. Ms. Guidry entered the program with a GRE score below the level typically required for admission, but she was admitted to the program primarily based on a recommendation from a then faculty member. Additionally, in her first semester in the program, Ms. Guidry had two “Ds” and one “C” at midterm in three of her courses, none of which were taught by Ms. Bahlinger. Ms. Guidry was counseled regarding her performance by Phyllis Pederson, the Program Director for OLOL’s nurse anesthesia program, and Ms. Guidry was permitted to drop the courses in which she was under-performing.

. In one conclusory sentence in her appellate brief, Ms. Guidry asserts that Ms. Bahlinger and Ms. Pederson were on the appeal board, arguably in support of an argument that OLOL did not follow the appeal process. However, there is no evidence that Ms. Bah-linger or Ms. Pederson were members of an "appeal board.” Rather, the record demonstrates that with regard to Ms. Guidry's grade appeal, the program director, Ms. Pederson, and the dean of nursing discussed the appeal after considering the information provided by the student and the course faculty, Ms. Bah-linger. These procedures were in accordance with student handbook, which provides, in pertinent part:
Once the written appeal is submitted, the Program Director will consider the information presented by the student and the course faculty. The Program Director will discuss the appeal with the Dean of Nursing. ... The decision by the Program Director and Dean will be final....
Further, there is no evidence that Ms. Ped-erson or Ms. Bahlinger were members of the APG committee. Rather, they were merely present at the program dismissal hearing to answer any questions of the committee, per the program dismissal appeal rules set forth in the student handbook, which provide, in pertinent part:
The student making the appeal and all previous faculty members who have taught that student will be notified in writing of the appeals hearing date. The student ... and the pertinent faculty shall be present during all phases of the hearing ... The members of the committee may inquire of the student and any other party present such additional information pertinent to the grade in question.
Therefore, to the extent that this issue was properly raised by Ms. Guidry in her appellate brief, we find it to be without merit.