NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0610n.06
Filed: July 19, 2005

Case No. 04-5193

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NICKLAUS ATRIA,                                )
                                               )
        Plaintiff-Appellant,                   )
                                               )          ON APPEAL FROM THE
        v.                                     )          UNITED STATES DISTRICT
                                               )          COURT FOR THE MIDDLE
VANDERBILT UNIVERSITY,                         )          DISTRICT OF TENNESSEE
                                               )
        Defendant-Appellee.                    )
                                               )
        _____    )
                                               )
                                               )
                                               )

BEFORE:  NELSON and BATCHELDER, Circuit Judges; O'MALLEY[*], District Judge.

        ALICE M. BATCHELDER, Circuit Judge.  Plaintiff-Appellant Nicklaus Atria appeals

the district court's order granting summary judgment in favor of the Defendant-Appellee Vanderbilt

University on his claims of negligence, negligence per se, breach of contract, and promissory

estoppel.  Because genuine issues of material fact remain as to Atria's negligence and breach of

contract claims, we will REVERSE the district court's order in part and AFFIRM in part.

**I.**

        Nicklaus Atria was a pre-med student at Vanderbilt University when the events giving rise

to this litigation occurred.  During the spring semester of 2002, Atria was enrolled in an Organic

Chemistry class taught by Professor B.A. Hess.  On January 29, 2002, Professor Hess gave an

---

[*]The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio,
sitting by designation.

examination that required students to record their answers on an answer sheet. Professor Hess's system for returning the graded tests is – at least in our experience – unusual. After grading the tests, Professor Hess would place the answer sheets in a stack on a table outside of the class room. Before the next class, students would thumb through the stack and locate their answer sheets, which were conspicuously marked with their names and social security numbers. Professor Hess testified that he did not know the names of most students and had no way of knowing whether students were picking up their own tests. After class, Professor Hess would gather those tests that had not been retrieved from the table and distribute them directly to the students during the next class period. Atria was absent from class on Friday, February 1, 2002, the day that the graded answer sheets were put out for general retrieval. He therefore, received his graded test on the following Monday.

Professor Hess allows any student who believes that an answer on his test was incorrectly marked as wrong to resubmit the answer sheet for a "re-grade." To prevent students from seeking a re-grade after altering incorrect answers, Professor Hess retained photocopies of all of the answer sheets. Atria, who had taken another chemistry class from Professor Hess in the fall of 2001, testified that he was aware of Professor Hess's practice of photocopying the original answer sheets. According to Atria, when he picked up his answer sheet on Monday, the answer recorded for question number six was "b>c>a," which is the correct answer. Because question six was marked as incorrect on his answer sheet, Atria returned his test to Professor Hess for a re-grade. According to the photocopy retained by Professor Hess, however, Atria's original answer to question number six was "b>a>a." It appeared to Professor Hess that an "a" in question number six had been changed to a "c." Professor Hess reported this irregularity to Vanderbilt's Honor Council and

2

accused Atria of fraudulently modifying his answer sheet to get credit for question number six.[1] Atria was not the first student whom Professor Hess has reported to the Honor Council. Whereas most of Vanderbilt's professors never reported an Honor Code violation, Professor Hess submitted approximately five to ten violations per semester; a Vanderbilt administrator stated that Hess was putting "a heavy load on the Honor Council's docket."

Vanderbilt's Student Handbook contains a detailed description of the University's honor system, including its Honor Code, the applicability of the Code, procedures for the adjudication of asserted violations, and appeals from a finding of guilt. When a violation of the Honor Code is reported, the Honor Council appoints two investigators who meet with the accused and present him with a written statement of the charges. The Student Handbook provides that "[a]n accused may obtain professional legal representation, advice, and counsel. However, an attorney may not participate in or be present during an Honor Council hearing. The Honor Council is a student tribunal untrained in the law." An Honor Council hearing is conducted by a twelve-member panel consisting of the President of the Honor Council and eleven members of the Council appointed by the President. Proof of a student's guilt must be "clear and convincing" and ten of the twelve members must vote "guilty" to convict.

A student found guilty by the Honor Council may appeal the decision to the Appellate Review Board ("ARB") by filing a petition with the Honor Council's faculty advisor. Before the petition may be heard on the merits, it must be determined that the petition presents sufficient grounds for an appeal. Exactly who performs this gatekeeping function is not entirely clear inasmuch as the provisions in Vanderbilt's Student Handbook and "Procedures of the Appellate

---

[1] Had Atria received full credit for question number six, he would have received a "B" rather than a "B-" on the test. The test in question counted for 25% of Atria's overall grade in the class.

3

Review Board" regarding the procedure are inconsistent. The grounds for review of an appeal from conviction by the Honor Council are:

1) Insufficient evidence to support the decision;
2) Harshness of sanction sufficient to show an abuse of discretion by the original hearing authority;
3) Procedural irregularity sufficient to affect the decision; and
4) New evidence that was not reasonably available to be presented to the original hearing authority, the introduction of which may reasonably be expected to affect the decision.

If the ARB hears the student's case on the merits, it may, by majority vote, affirm, modify, or reverse the decision of the original hearing authority.

On March 19, 2002, Vanderbilt's Honor Council conducted a hearing in Atria's case. Professor Hess, who did not appear personally, submitted a written accusation with copies of the altered original and the unaltered photocopied answer sheets attached. During the hearing, Atria testified that he was not guilty of the charges and that his answer sheet could have been smudged while in his book bag. At the conclusion of the hearing, the Council advised Atria that he had been found guilty as charged and imposed a sentence of failure in Organic Chemistry and a suspension from the University during the summer session. Several days later, Atria paid for and took a polygraph test conducted by a local polygraph examiner. According to the examiner's analysis of the results, Atria's statements that he did not alter the answer to question six were "truthful."

In April of 2002, Atria's attorney signed and filed a petition for appeal on Atria's behalf with Mark Bandas, the advisor to the Honor Council. Attached to the petition was a copy of the polygraph results. Bandas contacted Atria's attorney to advise him that the University would not accept a petition signed by an attorney and, in any event, would not consider the results of a polygraph test. Atria subsequently filed a complaint in the Circuit Court for Davidson County

4

Tennessee, seeking a preliminary injunction requiring Vanderbilt to accept the appeal and consider the results of the polygraph examination. The court denied relief.

After the ARB refused to accept the original petition, Atria submitted a second petition which he signed personally and which omitted any mention of the polygraph evidence. In this petition, Atria argued that another student, who was angry that Atria was given more time than other students to complete written examinations (due to a disability) and fearful that Atria might surpass him in Professor Hess's curve, had framed Atria by tampering with his test. In a letter dated May 29, 2002, Francis Wells, the Chairman of the Appellate Review Board, notified Atria that his appeal was meritless and that a hearing was unnecessary. This letter indicates that Wells personally reviewed the petition and did not submit it to the other members of the ARB for consideration. Indeed, Wells testified that, as Chairman, he had the power to reject a petition as presenting insufficient grounds for appeal without allowing the full panel to hear it.

Atria filed suit against Vanderbilt in United States District Court asserting, *inter alia*, state law claims of negligence, negligence per se, breach of contract, and promissory estoppel. The Complaint, which seeks monetary damages and injunctive relief, asserts that Atria was wrongfully found guilty of an Honor Code violation. Exercising its diversity jurisdiction, the district court granted Vanderbilt's motion for summary judgment on all claims. Atria timely appealed.

**II.**

Atria appeals the district court's grant of summary judgment in favor of Vanderbilt on his negligence claim. We review a district court's grant of summary judgment de novo. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999)(en banc). A motion for summary judgment should be granted only if the moving party "show[s] that there is no genuine issue as to any material fact and

5

that [it] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 248 (1986). The court must take the nonmoving party's well-pleaded allegations as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 1 (1977). "[T]he governing substantive law in diversity actions is state law, and in this case that is Tennessee law." *Certain Interested Underwriters at Lloyds, London v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994).

Atria alleges that Professor Hess was negligent in the manner in which he redistributed the graded answer sheets from his Organic Chemistry exam. At the outset, we address Vanderbilt's argument that Atria's claim is actually a claim for educational malpractice, which the overwhelming majority of courts have held to be not cognizable. *See Ross v. Creighton Univ*., 957 F.2d 410, 414 (7th Cir. 1992). This court, applying Tennessee law, has stated that claims of educational malpractice are based on a plaintiff's allegation that he received inadequate educational services. *Hutchings v. Vanderbilt University*, 55 Fed. Appx. 308, 310 (6th Cir. 2003) (unpublished) (citing *Ross*, 957 F.2d at 414). Atria's is not a claim for educational malpractice because it does not challenge the adequacy of the education that Vanderbilt provided. Rather, Atria's challenge is to Professor Hess's method of handing back the graded answer sheets, which Atria claims was negligent and proximately caused Atria's injury.

To make out the prima facie case for negligence, Atria must prove each of the following five elements: 1) a duty of care owed by the defendant to the plaintiff; 2) a breach of that duty; 3) an injury or loss; 4) cause in fact; and 5) proximate legal causation. *Camper v. Minor*, 915 S.W.2d 437, 446 (Tenn. 1996). The district court held that Atria could not make out the prima facie case for negligence because "there is no way for this Court or any finder of fact to determine what the

6

appropriate standard of care is for a teacher returning graded exams." However, the fact that it may be difficult to establish "precise criteria" by which to judge a defendant's actions does not mean that the defendant owes others no duty. *See Stehn v. Bernarr Macfadden Foundations, Inc.*, 434 F.2d 811, 815 (6th Cir. 1970).[2] Vanderbilt and its agents owe everyone, including Atria, a duty to refrain from conduct that poses an unreasonable and foreseeable risk of harm. In Tennessee "[a]ll persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others. Thus, it has been said that duty is the legal obligation that a defendant owes a plaintiff to conform to a reasonable person standard of care in order to protect against unreasonable risks of harm." *Burroughs v. Magee*, 118 S.W.3d 323, 329 (Tenn. 2003) (internal citations omitted). In other words, "a duty of reasonable care exists if defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property . . . A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). The duty of due care applies to a plaintiff's property as well as his person. *Id; Smith v. Roane-Anderson Co*., 207 S.W.2d 353, 355 (Tenn. Ct. App. 1947).

The facts in this case are in dispute as to whether the manner in which Professor Hess distributed graded answer sheets posed an unreasonable risk of harm. A jury could certainly

---

[2]We are not persuaded by Vanderbilt's argument that Atria is owed no duty of care because "[t]here is no way that an average juror could put himself or herself in the place of a college professor in an advanced level course and determine what was 'reasonable' conduct in the distribution of graded examination papers." Given that Tennessee law requires a juror to put himself in the place of a surgeon to determine whether "the defendant failed to act with ordinary and reasonable care when compared to the customs or practices of physicians from a particular geographic region," *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986), we do not think it unreasonable to ask a juror to put himself in the shoes of a professor, even a professor in an advanced level course, who hands back graded tests.

conclude that the burden on Professor Hess to engage in alternative conduct that would have prevented the harm is at most de minimis: instead of handing back the students' original answer sheets he could have retained the originals and handed back the photocopies, which could not be altered.[3] A jury could find that the harm caused by Professor Hess's conduct was foreseeable. Bandas testified that he met with Professor Hess in the Fall of 2002 because "[Professor Hess] had been submitting a number of cases to the honor council based on students altering, you know, score sheets for a re-grade. He was actually submitting a sufficient number of them, and that it was putting a heavy load on the honor council's docket." In a prior Honor Council proceeding, a student accused by Professor Hess asserted, as a defense, that another student tampered with her test before it was returned to Hess for a re-grade. Though this student subsequently admitted to altering her own answer sheet, a jury could easily find that this incident should have alerted Professor Hess to the possibility that one student might tamper with another's answer sheet. Indeed, the record supports the inference that Professor Hess was actually well aware of the risk posed by his redistribution system, inasmuch as he made photocopies of the answer sheets in an effort to combat dishonesty on the part of students seeking a re-grade. *See McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (stating that the foreseeability requirement does not require the tortfeasor to foresee the exact manner in which the injury takes place provided that the tortfeasor could foresee the general manner in which the injury occurred).

The gravity of the harm posed by Hess's distribution system is severe: a wrongful conviction

---

[3]In fact, Professor Hess admitted that Bandas met with him in the Fall of 2002, after Atria's Honor Council hearing, and suggested that he redistribute the photocopies instead. When asked how he responded to Bandas's suggestion, Professor Hess testified "I tell you, I don't recall much about the meeting to be frank because I was kind of put off by the meeting, that I felt that they were encroaching on my academic freedom, and I'm pretty strong on academic freedom. So I basically dismissed what they were talking about."

by a disciplinary committee could ruin a student's chances of admittance to graduate school. In sum, a jury reasonably could conclude that Professor Hess's distribution system created an unreasonable risk of harm because the foreseeable probability of, and the gravity of the harm resulting from, a wrongful Honor Council conviction outweigh the burden on Professor Hess to redistribute the photocopy of the answer sheet rather than the original.

Atria must also show that Vanderbilt's actions were the proximate cause of his injury. "Proximate cause, as well as the existence of a superseding, intervening cause, are jury questions unless the uncontroverted facts and inferences to be drawn from the facts make it so clear that all reasonable persons must agree on the proper outcome." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 905 (Tenn. 1996). Tennessee has adopted a three-pronged test for proximate causation: 1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; 2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and 3) the harm giving rise to the action could reasonably have been foreseen or anticipated by a person of ordinary intelligence and prudence. *Haynes v. Hamilton County*, 883 S.W.2d 606, 611-12 (Tenn. 1994) (quoting *McClenahan*, 806 S.W.2d at 775). There are two possible causes of Atria's Honor Council conviction: either he cheated and caused his own injury or, he did not cheat, someone else made the alteration on his answer sheet before Atria retrieved it, and Professor Hess's method of returning the tests was the proximate cause of his Honor Council conviction. Because the record contains evidence that could lead reasonable people to disagree about the cause of Atria's Honor Council conviction, the question of proximate cause is one for the jury.

Vanderbilt also argues that Atria's injury was not foreseeable because a professor could not

9

have imagined that a student, in an effort to improve his position in the curve, would sabotage another student's test. We suspect that a jury would not think that conjuring up this scenario would take much imagination, particularly in today's competitive academic institutions. In any event, it is for the jury to determine: in Tennessee "an intentional tortious act does not necessarily supercede a prior negligent act." *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 89 (Tenn. 2001). "An intervening act will not exculpate the original wrongdoer unless it appears that the negligent intervening act could not have been reasonably anticipated." *Evridge v. American Honda Motor Co.,* 685 S.W.2d 632, 635 (Tenn. 1985). As we have already indicated, there is a genuine issue of material fact as to whether it was foreseeable that Professor Hess's method of redistributing tests could result in a wrongful honor code conviction.

For the foregoing reasons, we reverse the district court's order granting summary judgment on Atria's negligence claim.

**III.**

Atria argues that the district court erroneously granted summary judgment on his negligence per se claim, which he bases on the Family Educational Rights & Privacy Act ("FERPA"), 20 U.S.C. § 1232g. The operable provision of this statute provides,

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . .) of students without the written consent of their parents to any individual, agency, or organization . . . .

20 U.S.C. § 1232g(b)(1). "In order to establish negligence per se, it must be shown that the statute violated was designed to impose a duty or prohibit an act for the benefit of a person or the public. It must also be established that the injured person was within the class of persons that the statute was

10

meant to protect." *Cook By and Through Uithoven v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994) (internal citations and quotations omitted).

The district court concluded that the FERPA does not support a claim of negligence per se because it does not define a standard of care. We agree. Under Tennessee law, only statutes that establish a standard of care may support a claim of negligence per se. *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003); *Thomas & Associates, Inc. v. Metropolitan Government of Nashville*, 2003 WL 21302974 (Tenn. Ct. App. 2003) (citing *King v. Danek Med. Inc.,* 37 S.W.3d 429, 460 (Tenn. Ct. App. 2000)). The *King* court stated,

> When alleging a statute or regulation based negligence per se claim, it is not sufficient for a plaintiff to assume . . . that the alleged violation of a statute automatically supports a claim of negligence per se. Even if the plaintiffs are within the class to be protected by the statute, a statutory negligence per se claim cannot stand unless the statute establishes a standard of care . . . . Where a statutory provision does not define a standard of care but merely imposes an administrative requirement, such as the requirement to obtain a license or to file a report to support a regulatory scheme, violation of such requirement will not support a negligence per se claim. Even if the regulatory scheme as a whole is designed to protect the public or to promote safety, the licensing duty itself is not a standard of care, but an administrative requirement . . . [Such rules] are essential to the underlying federal regulatory scheme that serves important societal interests. But because such . . . rules are administrative, they do not amount to a legislative judgment as to the standard of care, and accordingly, breach of these provisions in themselves cannot underlie a negligence per se claim.

*King*, 37 S.W.3d at 460 (quoting *Talley v. Danek Medical Inc.,* 179 F.3d 154, 159 (4th Cir. 1999) (internal citations, italics and quotations omitted).

Our conclusion that the FERPA imposes administrative requirements and does not define a standard of care is supported by the Supreme Court's dicta in *Gonzaga University v. Doe*, 536 U.S. 273 (2002). "FERPA's nondisclosure provisions . . . speak only in terms of institutional policy and practice, not individual instances of disclosure . . . . [The nondisclosure requirements] are not

11

concerned with whether the needs of any particular person have been satisfied . . . ." *Id*. at 288 (quotation omitted). Moreover, the harm that Atria suffered does not seem like the sort of harm against which the FERPA seeks to protect. "Congress enacted the FERPA to protect [parents' and students'] rights to privacy by limiting the transferability of their records without their consent." *United States v. Miami University*, 294 F.3d 797, 806 (6th Cir. 2002) (quotation omitted). Atria does not allege that he was harmed by the dissemination of his private information (he gave Vanderbilt the authority to post his grades on the web) but instead alleges that he was harmed by the manner in which Professor Hess redistributed the tests. We affirm the portion of the district court's order granting summary judgment on Atria's negligence per se claim.

## IV.

Atria's breach of contract claims are based on Vanderbilt's alleged failure to follow the Honor Council's procedural rules, as embodied in the Student Handbook, in the handling of his case and his appeal. A breach of contract claim has three elements: 1) the existence of an enforceable contract; 2) nonperformance amounting to a breach of the contract; and 3) damages caused by the breach of the contract. *Life Care Ctrs. of America*, *Inc. v. Charles Town Assocs. Ltd. Partnership, LPIMC, Inc*., 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee Law). Specifically, Atria alleges that the University breached its own procedures by dismissing his appeal without submitting the petition to the entire ARB; holding an Honor Council meeting without requiring the presence of Professor Hess, the accuser; refusing to consider the results of the polygraph examination; failing to provide an unbiased appellate body; and refusing to accept a petition that was signed by Atria's attorney. We will first discuss the legal significance of the Student Handbook and then consider each of Atria's breach of contract claims in turn.

12

Though Vanderbilt's Student Handbook, which states that its policies "are not intended to be all-inclusive and do not constitute a contract," is not an express written contract, *see Ku v. State of Tennessee*, 104 S.W.3d 870, 876 (Tenn. Ct. App. 2003) (holding that East Tennessee State University's Student Handbook is not a written contract), its provisions may be enforced in Tennessee if it creates an implied contract. *See Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 405 (Tenn. 2002). This court, applying Tennessee's law, has stated that "the student-university relationship is contractual in nature although courts have rejected a rigid application of contract law in this area." *Doherty v. Southern College of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988). Catalogs, manuals, handbooks, bulletins, circulars and regulations of a university may help define this contractual relationship. *Ross*, 957 F.2d at 416. The district court held that dismissal of Atria's breach of contract claim was necessary because a federal court is an inappropriate forum in which to challenge academic matters. We disagree with the district court's characterization of this claim as one challenging academic matters. "[C]ourts have adopted different standards of review when educators' decisions are based upon disciplinary versus academic criteria – applying a more intrusive analysis of the former and a far more deferential examination of the latter." *Doherty*, 862 F.2d at 577. The case at bar involves a disciplinary action by the university, and does not arise in the context of any academic finding, and may appropriately be brought in this court.

An issue of material fact exists as to whether Vanderbilt breached this implied contract when Wells personally dismissed Atria's petition as presenting insufficient grounds for review rather than submitting it to the entire ARB. Vanderbilt has conflicting rules about whether the ARB chairman or the entire ARB performs the gatekeeping function of determining whether the petition states sufficient grounds for appeal. The Student Handbook says "[i]f the chair determines that the

13

petition, when considered in the light most favorable to the petitioner, does not set forth a basis sufficient to provide the relief sought by the petitioner, the ARB Chair will dismiss the petition. The ARB Chair's decision is final." However, the Procedures of the Appellate Review Board provides,

> [t]he panel will review the petition and, by majority vote, will determine whether the petition presents sufficient grounds for an appeal . . . If the panel determines that the petition does set forth sufficient grounds for the appeal, the panel will proceed to a full consideration of the appeal.

Vanderbilt asserts that the provisions of the Student Handbook, which were adopted in 1999, supercede the "Procedures of the Appellate Review Board," which were adopted in 1995. While Vanderbilt has the right to amend its procedures, *see Doherty*, 862 F.2d at 577-78, there is nothing in the record to suggest that the University did, in fact, amend the Procedures of the Appellate Review Board. Vanderbilt's argument that the Student Handbook preempts the Procedures of the Appellate Review Board is inconsistent with the Handbook itself, which incorporates the Procedures by reference: "[a] copy of the Appellate Review Board's procedures is available at the offices of the Vice Chancellor for Student Life and Chair of the Conduct Councils." Because Vanderbilt admitted in its responses to Atria's requests for admission that that the Procedures of the Appellate Review Board were in force at the time of Atria's Honor Council conviction, the conflict between these procedures and the Student Handbook raises a factual issue as to whether Vanderbilt substantially complied with its own rules.

Atria also argues that Vanderbilt breached its contract by refusing to consider the polygraph evidence that he submitted with his petition of appeal. Vanderbilt's Procedures of the Appellate Review Board state that a petition must include "a statement of position, together with copies of or reference to all evidence the Petitioner asks the Board to consider, which support the grounds for appeal." Neither Vanderbilt's Student Handbook nor the ARB's rules of procedure, however,

14

expressly prohibit a petitioner from submitting polygraph evidence. Vanderbilt argues that the ARB's refusal to accept polygraph evidence was justified because polygraph tests are scientifically unreliable. While it is true that the reliability of polygraph exams is questionable at best, *see United States v. Scheffer*, 523 U.S. 303, 309-10 (1998), it is also true that the reliability of hearsay evidence is questionable. *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994). But Vanderbilt's Honor Council relied heavily on hearsay evidence, *i.e.* Professor Hess's written statement, to convict Atria. A reasonable juror could conclude that Vanderbilt's decision to accept some forms of unreliable evidence but not others was an arbitrary decision and a breach of its implied contract with Atria. We find that a genuine issue of fact remains regarding this claim of breach of implied contract.

No factual disputes remain regarding Atria's remaining contract claims, and summary judgment was proper as to each of them. Although the Student Handbook requires the presence of the accuser at the Honor Council proceeding, Atria has presented no evidence from which a jury could find that Hess's absence caused him any damage. According to the Procedures of the Appellate Review Board, students convicted of Honor Code violations are entitled to "[a]n unbiased appellate body to which students may appeal." However, "in a university setting, a disciplinary committee is entitled to a presumption of honesty and integrity, absent a showing of actual bias." *McMillan v. Hunt*, No. 91-3843, 1992 WL 168827 at *2 (6th Cir. 1992) (citing *Ikpeazu v. Univ. of Nebraska*, 775 F.2d 250, 254 (8th Cir. 1985)). Atria's evidence that Francis Wells admitted telling Atria's mother that attorneys are "strident and exaggerated" and advising her that retaining an attorney was not in her son's best interests does not demonstrate actual bias, and is insufficient to overcome this presumption. Nor has Atria presented any evidence that he was injured by Vanderbilt's rejection of his initial petition for appeal, inasmuch as the University accepted his

15

second petition.

## V.

Atria argues that the district court erred in dismissing his claim of promissory estoppel. A plaintiff may establish a claim for promissory estoppel by demonstrating that: 1) a party made a promise which the promisor should reasonably have expected to induce the action or forbearance of the promisee; 2) the promise does induce such action or forbearance; and 3) injustice can be avoided only by enforcement of the promise. *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982). Atria argues that the procedures outlined in the Student Handbook constitute a promise on which he relied. To support a claim for promissory estoppel, however, a plaintiff must show that his reliance caused an economic detriment. *Alden*, 637 S.W.2d at 864; *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999). Atria proffered no evidence that his reliance on the Student Handbook's procedures caused him economic harm. This claim was properly dismissed on summary judgment.

## VI.

Finally, Atria halfheartedly argues that the district court erred in excluding the testimony of two of his proposed expert witnesses. While Vanderbilt's motion for summary judgment was pending, the Magistrate Judge issued an order excluding the testimony of two of Atria's expert witnesses on the authority of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993). The district court granted summary judgment without rejecting or accepting the Magistrate's ruling and its memorandum opinion does not discuss the exclusion of Atria's expert evidence. Because the district court did not rule on the issue, it is not a final appealable order that is reviewable by this court.

**VII.**

For the foregoing reasons, we **REVERSE** the district court's order granting summary judgment on Atria's negligence claim, **REVERSE** in part the order granting summary judgment on the breach of contract claims, **AFFIRM** the district court's order on all other respects, and **REMAND** this case for further proceedings consistent with this opinion.