FILED
05/29/2020
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 3, 2019 Session

## JUSTIN RICE v. BELMONT UNIVERSITY

**Appeal from the Chancery Court for Davidson County**
**No. 17-1066-IV      Russell T. Perkins, Chancellor**

_____

### No. M2018-01092-COA-R3-CV
_____

A private university dismissed a graduate student for poor academic performance. The student sued the university for breach of contract, claiming the university failed to follow its own procedures in considering his grade appeal and other post-dismissal requests. The university moved to dismiss for failure to state a claim upon which relief can be granted, and the trial court dismissed the complaint with prejudice. Because the complaint adequately alleges a claim for breach of contract, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Jason D. Holleman, Nashville, Tennessee, for the appellant, Justin Rice.

Charles I. Malone and Beau C. Creson, Nashville, Tennessee, for the appellee, Belmont University.

## OPINION

### I.

Justin Rice was a student in the Doctor of Nursing Practice program at Belmont University. In the fall of 2016, he failed one of his classes. Failing a class was grounds for dismissal from the program. Mr. Rice appealed his grade to the Dean of Nursing, Dr. Cathy R. Taylor. Dean Taylor denied his appeal. She also denied his request to transfer to another graduate nursing program. Treating his transfer request as a request

for readmission, she explained that he did not meet the criteria for readmission. Belmont also refused to provide Mr. Rice with a letter of good standing.

Mr. Rice then sued Belmont for breach of contract, seeking both compensatory damages and injunctive relief. Belmont moved to dismiss his original complaint for failure to state a claim upon which relief may be granted. *See* Tenn. R. Civ. P. 12.02(6). The trial court gave Mr. Rice the opportunity to amend his complaint to correct any deficiencies.

After Mr. Rice filed his amended complaint, Belmont renewed its motion to dismiss. The amended complaint alleged that the parties had an express or implied contract, the terms of which were set forth in the School of Nursing Student Handbook (the "Handbook") and the Belmont University Graduate Catalog (the "Guide"). The complaint went on to allege that Belmont "failed to perform its obligations under such contract, which included failing to follow the policies set forth in the [Handbook] and Guide, as set forth in the foregoing paragraphs."

In her letter denying the appeal of Mr. Rice's failing grade, Dean Taylor stated that "[his] appeal options [were] now exhausted . . . and [his] dismissal from the program [was] final." Mr. Rice complained that this "misstat[ed]" his rights and "denied [him] the process afforded him under the Handbook and [the Guide]." Mr. Rice also faulted Belmont for "wrongfully" treating his transfer request as a request to be readmitted and refusing to provide him with a letter of good standing. Mr. Rice sought an injunction requiring Belmont to reinstate him to the nursing program or to provide him with a letter of good standing and an award of compensatory damages equal to his tuition payments.

The trial court dismissed the amended complaint with prejudice. The court determined that the gravamen of the amended complaint was a challenge to an academic decision. And Mr. Rice had failed to allege a "legal ground to justify undertaking a review of his grade." The court found no merit in Mr. Rice's allegations that Dean Taylor had denied him the full appeal process. The Guide placed the onus of seeking further review on the student, and the pleadings lacked an allegation that Mr. Rice had sought further review. The court also ruled that the Handbook and Guide did not constitute a binding contract. Because the Guide specified that it was not a contract, the court concluded that the Handbook and Guide did not contain "actionable, binding representations or contractual agreements by Belmont."

## II.

A Rule 12.02(6) motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). We "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of

2

all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). Viewed in that light, the "complaint must contain sufficient factual allegations to articulate a claim for relief." *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 104 (Tenn. 2010). We are not required to accept as true legal arguments or conclusions couched as facts. *Webb*, 346 S.W.3d at 427.

A complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts in support of his claim that would warrant relief. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). Making such a determination presents a question of law. Our review of a trial court's determinations on issues of law is de novo, with no presumption of correctness. *Id.*

To articulate a claim for relief for breach of contract, the claimant must allege an enforceable contract, nonperformance amounting to a breach, and damages. *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005). Mr. Rice alleged that he entered a binding contract with Belmont upon admission to the graduate nursing program, the terms of which were set forth in the Handbook and the Guide. The Guide contained an express disclaimer that it was "not intended to state contractual terms and should not be regarded as a contract between the student and the institution."[1] This disclaimer precludes Mr. Rice from relying on the Guide as an express contract. *See Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) ("A contract 'must result from a meeting of the minds of the parties in mutual assent to the terms.'"). This Court has previously rejected similar claims that a university catalog was intended as a contract when the catalog contained an almost identical disclaimer. *See Lord v. Meharry Med. Coll. Sch. of Dentistry*, No. M2004-00264-COA-R3-CV, 2005 WL 1950119, at *4 (Tenn. Ct. App. Aug. 12, 2005) ("[T]his manual does not constitute a contract, expressed or implied, between any applicant, student, or faculty member of Meharry Medical College, School of Dentistry."); *Gardner v. Univ. of Memphis Coll. of Bus.*, No. W2002-01417-COA-R3-CV, 2003 WL 1872640, at *3 (Tenn. Ct. App. Apr. 8, 2003) ("The University Catalogue at issue here contains a disclaimer that it 'is not intended to state contractual terms and does not constitute a contract between the student and the institution.'").

---

[1] "[R]esolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Webb*, 346 S.W.3d at 426. Belmont submitted portions of the Guide to the court as part of its motion to dismiss. When matters outside of the pleadings are presented to the trial judge on a motion to dismiss and not excluded, the motion is normally converted to a motion for summary judgment. Tenn. R. Civ. P. 12.02. That is not true here because, although Mr. Rice's claim is based on the Handbook and the Guide, he failed to attach either document as an exhibit to his complaint as required by our procedural rules. *See* Tenn. R. Civ. P. 10.03. Under these narrow circumstances, the trial court properly considered the Guide as part of the pleadings. *See Fitzgerald v. Hickman Cty. Gov't*, No. M2017-00565-COA-R3-CV, 2018 WL 1634111, at *3 (Tenn. Ct. App. Apr. 4, 2018) ("Where documents are required to be attached to a complaint in conformity with Rule 10.03, consideration of those documents by the trial court does not convert a motion to dismiss to a motion for summary judgment.").

But "Tennessee has long recognized that a contract can be express, implied, written or oral." *Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 34 (Tenn. Ct. App. 2005). Mr. Rice alleged the existence of an implied contract based on his status as a Belmont student. While no Tennessee court has directly addressed this issue, most courts find the relationship between a student and a private university to be contractual. *See, e.g.*, *Boehm v. Univ. of Pennsylvania Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. Ct. 1990) ("A majority of the courts have characterized the relationship between a private college and its students as contractual in nature."); *Neel v. I. U. Bd. of Trustees*, 435 N.E.2d 607, 610 (Ind. Ct. App. 1982) ("The most pervasive and enduring theory is that the relationship between a student and an educational institution is contractual in nature."); *see also Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 577 (6th Cir. 1988) (ruling that a Tennessee court would find an implied contract between a student and a private university). So we conclude that the amended complaint sufficiently alleged the existence of an implied contract.

Even so, we cannot ignore the setting of this implied contract. Contract principles are not applied strictly when doing so would override a purely academic decision. *See Guidry v. Our Lady of the Lake Nurse Anesthesia Program Through Our Lady of the Lake Coll.*, 2014-0461 (La. App. 1 Cir. 1/29/15); 170 So. 3d 209, 214; *see also Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 626 (10th Cir. 1975) (holding that contract law should not be applied rigidly to the student-university relationship). Courts are understandably reluctant to intervene in academic matters. *Doherty*, 862 F.2d at 576. We "are ill equipped to evaluate academic performance." *Canady v. Meharry Med. Coll.*, 811 S.W.2d 902, 905 (Tenn. Ct. App. 1991). And we will not second-guess a school's decisions regarding academic standards or degree requirements. *See DeArk v. Belmont Coll.*, 1988 WL 136671, at *2 (Tenn. Ct. App. Dec. 21, 1988) ("The faculty's decision on how to raise the school's standards is due great respect from this court.").

Mr. Rice contends that he is not asking the court to review his academic dismissal per se. Rather, his breach of contract action is premised on Belmont's failure to follow the policies and procedures in the Handbook and the Guide. And he cites two unreported federal court decisions as legal authority for the proposition that a student has a cognizable claim for breach of contract when a private university fails to follow its own procedures. *See Anderson v. Vanderbilt Univ.*, 450 F. App'x 500, 502 (6th Cir. 2011); *Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 255 (6th Cir. 2005). But Mr. Rice's reliance on these federal court decisions is misplaced. The cited cases involve disciplinary actions, not academic decisions. *See Anderson*, 450 F. App'x at 502; *Atria*, 142 F. App'x at 255. There is a vast difference between "the failure of a student to meet academic standards and the violation by a student of valid rules of conduct." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978). Recognizing this difference, "courts have adopted different standards of review when educators' decisions are based

4

upon disciplinary versus academic criteria—applying a more intrusive analysis of the former and a far more deferential examination of the latter." *Doherty*, 862 F.2d at 577; *see generally*, Claudia Catalano, Annotation, *Liability of Private School or Educational Institution for Breach of Contract Arising From Expulsion or Suspension of Student*, 47 A.L.R.5th 1 (1997).

Accepting Mr. Rice's argument that this is not a challenge to an academic decision, he must allege nonperformance by Belmont amounting to a breach. *See Guidry*, 170 So. 3d at 214 (noting that student in a breach of contract action must identify a specific promise that the university failed to honor); *see also Motton v. Lane Coll.*, No. 2, 1988 WL 37016, at *1 (Tenn. Ct. App. Apr. 25, 1988) ("As to the contract claim, plaintiff does not allege that defendant promised or agreed to do anything . . . ."). On appeal, Mr. Rice contends that his allegations of breach can be found in paragraphs 10 through 17 his amended complaint. But his argument focuses on only two of those paragraphs.

In paragraph 15, Mr. Rice alleged that "[i]n misstating [his] rights in her letter, Dean Taylor denied [him] the process afforded him under the Handbook and [Guide]." Mr. Rice explains that the process to which he was entitled was a "review of the School of Nursing's decision by the Office of the Dean of Students." In paragraph 16, Mr. Rice alleged that Belmont wrongfully treated his request for a transfer from the doctoral program to the master's program as a request to be readmitted into the doctoral program.

We agree with Mr. Rice in part. Paragraph 15 sufficiently alleges nonperformance by Belmont amounting to a breach. According to the Handbook, Belmont's School of Nursing adopted the formal complaint procedures found in the Guide. The Guide specified:

> After contacting the appropriate department directly and receiving a final response . . . , any student who still believes he or she has been treated unfairly by a university employee or process, may seek review with possible alternative resolution through the Dean of Students office. "Unfairly" means there was no process of review as described above or in a University publication; or adequate explanation of the final disposition to the student's grievance; or there was a noted bias on the part of the decision maker, which affected the decision.

A liberal reading of Mr. Rice's complaint indicates two claims of unfairness that would be subject to review by the Dean of Students office. The first claim is an allegation that his failing grade was "unwarranted" and instead motivated by "a personality clash with one of his professors." We interpret that as a claim of bias on the part of the decision maker. The second claim is an allegation that Mr. Rice's instructor was also the director of graduate studies so that there was no process of review as described in the Handbook.

5

Paragraph 15 of the amended complaint alleges that Mr. Rice was denied the review by the Dean of Students office that would have resolved his claims of unfairness against the School of Nursing. We accept this allegation as true for purposes of our review. *Trau-Med of Am., Inc.*, 71 S.W.3d at 696.

Paragraph 16, on the other hand, does not sufficiently allege nonperformance by Belmont amounting to a breach. Mr. Rice failed to identify any provision in the Handbook or the Guide that required Belmont to treat his transfer request differently.

Finally, Mr. Rice has alleged damages as a result of Belmont's alleged breach. He contends the damages include "lost tuition payments, damaged personal and professional reputation and lost earning capacity." For these damages, according to his reply brief, Mr. Rice "only seeks to have [Belmont] deliver upon the promises it has made to Plaintiff in terms of giving him due consideration of his academic appeal . . . ."

### III.

Construing the amended complaint liberally, presuming all factual allegations to be true and giving Mr. Rice the benefit of all reasonable inferences, we conclude that he has stated a claim for breach of contract. So we reverse the dismissal and remand this case for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE

6