STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0666
AND
NO. 2021 CA 0667

LAKEISHA MILLS, FELICITY MITCHELL, ROBERTA ROSS,
NATASHA GRAVES, ASHLEY SUEL, KALEEN MOSES, KATHY BARBAY,
JENNIFER GAFFNEY, AND ADLAI MACK STEVENSON, II

VERSUS

DR. LEON R. TARVER, II, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY AS CHAIR OF THE BOARD OF SUPERVISORS OF SOUTHERN
UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE,
THE BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE, NANCY L. DAVIS,
MA, RN, NE-BC, IN HER INDIVIDUAL AND OFFICIAL CAPACITY AS
PRESIDENT OF THE LOUISIANA STATE BOARD OF NURSING, THE
LOUISIANA STATE BOARD OF NURSING, RICHARD A. LIPSEY, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY AS CHAIR OF THE LOUISIANA
BOARD OF REGENTS, THE LOUISIANA BOARD OF REGENTS,
DR. RAY L. BELTON, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY
AS PRESIDENT-CHANCELLOR OF SOUTHERN UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE AT BATON ROUGE,
SOUTHERN UNIVERSITY AND AGRICULTURAL AND MECHANICAL
COLLEGE AT BATON ROUGE, JANET S. RAMI, R.N., PH.D., IN HER
INDIVIDUAL AND OFFICIAL CAPACITY AS DEAN OF SOUTHERN
UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE
AT BATON ROUGE, SCHOOL OF NURSING, AND SOUTHERN
UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE
AT BATON ROUGE, SCHOOL OF NURSING

Judgment Rendered: _____ **DEC 3 0 2021** _____

* * * * *

Appealed from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
No. C652559

The Honorable Timothy Kelley, Judge Presiding

* * * * *

Melanie C. Lockett  
New Orleans, Louisiana

Attorney for Plaintiffs/Appellants,
Lakeisha Mills, Felicity Mitchell,
Roberta Ross, Natasha Graves,
Ashley Suel, Kaleen Moses, Kathy
Barbay, Jennifer Gaffney, and
Adlai Mack Stevenson, II


Jeff Landry  
*Attorney General*  
Thomas M. Flanagan  
Camille E. Gauthier  
Brandon C. Briscoe  
*Special Assistant Attorneys General*  
New Orleans, Louisiana

Attorneys for Defendants/Appellees,
Dr. Ray L. Belton and
Dr. Janet S. Rami

* * * * *

BEFORE: LANIER, WOLFE, AND BURRIS,[1] JJ.

---

[1] The Honorable William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**WOLFE, J.**

In these consolidated appeals, the plaintiffs appeal summary judgments that dismissed their claims against Dr. Ray L. Belton and Dr. Janet S. Rami. We affirm.

## FACTS

The plaintiffs to this suit are nine former students at Southern University Agricultural and Mechanical College School of Nursing, who expected to graduate with their nursing degrees between December 2015 and May 2016. The Nursing School handbook provided to the plaintiffs advised that, in addition to completing their coursework, students were required to pass a comprehensive final examination with a score of 78% to graduate. Each of the plaintiffs scored lower than 78% on the final exam and was unable to graduate as anticipated. As a result, the plaintiffs instituted this suit for damages against the University and multiple other defendants, including Dr. Belton, President and Chancellor of the University, and Dr. Rami, former dean of the Nursing School, who were sued in their official and individual capacities.

Relevant to this appeal, the plaintiffs complained that although the Nursing School's curriculum specifically prepared them for final exams created by one company, they were administered exams created by two other companies for which they were unprepared. The plaintiffs contended that after they complained, the Nursing School failed to offer them opportunities to re-take the exam during the summer of 2016, as it had in previous summers. Additionally, the plaintiffs alleged that in prior years the Nursing School did not enforce the 78% passage rate stated in the handbook and allowed students to graduate with lower scores. The plaintiffs contended the Nursing School held them to a higher standard than prior students because it was on probation with The Louisiana Board of Nursing and was attempting

3

to maintain good standing and retain accreditation by manipulating its graduates' passage rate on the state licensing exam.[2]

The plaintiffs claimed that Drs. Belton and Rami, together with the University, the Nursing School, Dr. Leon R. Tarver, II, Chair of the Southern University Board of Supervisors, and the Board of Supervisors, collectively referred to by the plaintiffs as "Southern University," breached its conventional obligation to them by failing to offer them opportunities to take the final exam in the summer of 2016. Alternatively, they contended that decision was an inequitable and unjust abuse of rights or a retaliatory act in response to their filing of formal grievance procedures. The plaintiffs further contended that "Southern University" breached its conventional obligation to them by failing to sufficiently prepare them to pass the final exam, then subjecting them to "capricious academic evaluation." Alternatively, the plaintiffs contend "Southern University" was negligent in failing to sufficiently prepare them for the exam.

The plaintiffs further asserted a claim against "Southern University" under 42 U.S.C. §1983, for violating their rights to due process and equal protection under the federal and state constitutions. The plaintiffs contended that based on the year and the school's accreditation status, "varying students [were] held to varying, inconsistent, unpredictable[,] and improperly manipulated standards." Specifically, they alleged that the requisite passing score for the final exam was "a moving target" that was "determined arbitrarily and capriciously at the whim of the administration[.]" The plaintiffs further alleged that "Southern University" used "subjective grading [that] ran contrary to the published grading guidelines[,] was arbitrary and capricious[,] and violative of [the plaintiffs'] rights."

---

[2] The plaintiffs asserted additional claims against other defendants that are not at issue in this appeal, which included allegations of systemic and/or intentional racial discrimination with regard to the Nursing School's budget and curriculum as compared to other state nursing schools with majority white student populations.

4

The Board of Supervisors, Dr. Tarver, Dr. Belton, and Dr. Rami filed a joint answer to the plaintiffs' petitions, in which they generally denied the plaintiffs' allegations and asserted affirmative defenses. In particular, the defendants denied that the plaintiffs had been deprived of any constitutional rights or due process of law. The defendants contended that all actions by Drs. Belton and Rami were performed in the course and scope of their powers and duties as employees of the State of Louisiana, and that Drs. Belton and Rami were entitled to immunity against the plaintiffs' claims.

Drs. Belton and Rami then jointly moved for summary judgment,[3] arguing they were improperly sued simply because of their association with the University and that the plaintiffs lack evidence to support any claims against them personally. Drs. Belton and Rami characterized the plaintiffs' claims against them as arising from conventional obligations, educational malpractice, abuse of rights, and civil rights violations under §1983. Drs. Belton and Rami contended that: the plaintiffs have no evidence of any conventional obligation owed by Dr. Belton or Dr. Rami; Louisiana has rejected educational malpractice as a theory of liability; the plaintiffs have no evidence that Dr. Belton or Dr. Rami abused any personal right to the plaintiffs' detriment and Drs. Belton and Rami cannot be held liable for any abuse of their employer's rights; Drs. Belton and Rami cannot be sued under §1983 in their official capacities; and qualified immunity protects Drs. Belton and Rami from §1983 claims made against them in their individual capacities.

The plaintiffs opposed the motion, maintaining that their claims against "the individual defendants associated with Southern in their official and individual capacities have merit." The plaintiffs argued that their official capacity claims against the defendants should be maintained because at least two of the plaintiffs were entitled

---

[3] Dr. Tarver also joined in the motion for summary judgment, advancing the same arguments as Drs. Belton and Rami. The summary judgment dismissing the plaintiffs' claims against Dr. Tarver is not at issue in this appeal; therefore, we refer to the arguments as being made by Drs. Belton and Rami, without further reference to Dr. Tarver.

5

to mandatory injunctions ordering that their nursing degrees be conferred. The plaintiffs acknowledged that they did not assert a claim for injunctive relief in either their original or amended petitions but argued that injunctive relief would nonetheless be available to them after a trial and that summary judgment on the issue was precluded. The plaintiffs further argued that Drs. Belton and Rami were not entitled to qualified immunity as to their individual capacity claims because both violated the plaintiffs' constitutional rights to due process and equal protection of law. The plaintiffs asserted that the evidence additionally supported their claims against Drs. Belton and Rami for violations of the Louisiana Constitution, abuse of rights, negligence, and fraud. At the hearing on the motion, the plaintiffs clarified that they were not asserting "negligent education claim[s]"; rather, they were claiming "the Southern individual defendants ... breached and violated [the] plaintiffs' Constitutional Due Process and Equal Protection rights[.]"

Based on the evidence presented and applicable law, the trial court granted summary judgment in favor of Drs. Belton and Rami. The trial court reasoned that the defendants were acting in their capacities as officers or agents of the state and were entitled to qualified immunity. The trial court stated it found no evidence to prove that any of the defendants' actions were negligent, fraudulent, or in violation of the plaintiffs' constitutional rights. The trial court further stated the plaintiffs' request for an injunction was without merit since the defendants could not be ordered to confer nursing degrees.

The trial court signed separate judgments dismissing the plaintiffs' claims against Drs. Belton and Rami. The plaintiffs appealed each of the judgments, raising the same arguments that the trial court erred in granting summary judgment and

dismissing their claims against Drs. Belton and Rami.[4] On motion of the plaintiffs, this court consolidated the two appeals.

## SUMMARY JUDGMENT

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La. Code Civ. P. art. 966A(3). The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of every action. La. Code Civ. P. art. 966A(2). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. Code Civ. P. art. 966D(2). In determining whether summary judgment is appropriate, appellate courts review evidence *de novo* under the same criteria that governs the trial court's determination of whether summary judgment is appropriate. **In re Succession of Beard**, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60.

The initial burden of proof is on the party filing the motion for summary judgment. See La. Code Civ. P. art. 966D(1). The mover may meet this burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. See La. Code Civ. P. art. 966A(4). The mover's supporting documentary evidence must prove the essential facts necessary to carry his burden. **Leisure Recreation & Entertainment, Inc. v. First Guaranty Bank**, 2019-1698 (La. App. 1st Cir. 2/11/21), 317 So.3d 809, 817, writ denied, 21-00838 (La. 10/19/21), 326 So.3d 1223. Thus, in deciding a motion for summary judgment, it must first be determined

---

[4] The summary judgment granted in favor of Dr. Belton is the subject of the appeal numbered 2021CA0667 and the summary judgment granted in favor of Dr. Rami is the subject of the appeal numbered 2021CA0666.

7

whether the supporting documents presented by the mover are sufficient to resolve all material fact issues. **Id.** at 817-18; **Crockerham v. Louisiana Medical Mutual Insurance Company**, 2017-1590 (La. App. 1st Cir. 6/21/18), 255 So.3d 604, 608.

Once the motion for summary judgment has been properly supported by the moving party (*i.e.,* the mover has established the material facts through its supporting documentary evidence), and the mover has made a *prima facie* showing that the motion for summary judgment should be granted, the burden shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to his opposition, sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial - the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. See **Babin v. Winn-Dixie Louisiana, Inc.**, 2000-0078 (La. 6/30/00), 764 So.2d 37, 39. If the non-moving party fails to produce factual support in his opposition sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, La. Code Civ. P. art. 966D(1) mandates the granting of the motion for summary judgment. See **Babin**, 764 So.2d at 40.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. **Janney v. Pearce**, 2009-2103 (La. App. 1st Cir. 5/7/10), 40 So.3d 285, 289, writ denied, 2010-1356 (La. 9/24/10), 45 So.3d 1078. Further, simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. See **Franklin Credit Management Corp. v. Gray**, 2007-1433 (La. App. 4th Cir. 1/14/09), 2 So.3d 598, 603, writ denied, 2009-0476 (La. 4/17/09), 6 So.3d 795. A "genuine" issue is a triable issue, which means that an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. **Kasem v. State**

**Farm Fire & Casualty Company**, 2016-0217 (La. App. 1st Cir. 2/10/17), 212 So.3d 6, 13. A fact is "material" when its existence or nonexistence may be essential to a plaintiff's cause of action under the applicable theory of recovery. **Id.** Because the applicable substantive law determines materiality, whether a particular fact in dispute is material must be viewed in light of the substantive law applicable to the case. **Bryant v. Premium Food Concepts, Inc.**, 2016-0770 (La. App. 1st Cir. 4/26/17), 220 So.3d 79, 82, writ denied, 2017-0873 (La. 9/29/17), 227 So.3d 288.

## CONSTITUTIONAL CLAIMS

The plaintiffs contend the trial court erred in dismissing their constitutional claims against Drs. Belton and Rami.

Section 1983 of Title 42, United States Code, provides a civil remedy for a violation of a person's constitutional rights, pertinently stating:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Thus, recovery under §1983 requires a plaintiff to allege and prove two essential elements: 1) that the defendant's conduct occurred under color of state law; and 2) that the defendant's conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or a law of the United States. **Brown v. Board of Trustees-Municipal Police Employees' Retirement System**, 2017-0295 (La. App. 1st Cir. 12/18/17), 234 So.3d 260, 267, writ denied, 2018-0102 (La. 3/2/18), 269 So.3d 711.

The doctrine of qualified immunity generally shields government officials performing discretionary functions from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. **Harlow v. Fitzgerald**, 457 U.S. 800, 818, 102

9

S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For purposes of qualified immunity analysis, a right is considered to be "clearly established" only if existing legal precedent placed the statutory or constitutional question beyond debate, such that any reasonable official would have understood that his particular conduct violated that right. See **Mullenix v. Luna**, 577 U.S. 7, 11-12, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015); **Ashcroft v. al-Kidd**, 563 U.S. 731, 741, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011). It is not enough that the right, as a general matter, exists. Rather, the law must establish that the particular conduct of the defendant that is at issue violates that right. **Ashcroft**, 131 S.Ct. at 2084; **Irwin v. Santiago**, 2021-10020 (5th Cir. 10/21/21), 2021 WL 4932988, *2. This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." **District of Columbia v. Wesby**, --U.S.--, 138 S.Ct. 577, 589, 199 L.Ed.2d 453 (2018) (quoting **Malley v. Briggs**, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The Louisiana Constitution's due process guarantee is coextensive with that of the United States Constitution; therefore, the qualified immunity defense available to state officials sued under §1983 applies equally to state constitutional claims. See **Moresi v. State Through Department of Wildlife & Fisheries**, 567 So.2d 1081, 1093 (La. 1990).

This court has explained:

> Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability. Once raised, a plaintiff has the burden to rebut the qualified immunity defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

**Collins v. State ex rel. Department of Natural Resources**, 2013-0284 (La. App. 1st Cir. 12/20/13), 2013 WL 6795633, *6 (unpublished) (citing **Estate of Davis ex rel. McCully v. City of North Richland Hills**, 406 F.3d 375, 380 (5th Cir. 2005)).

On appeal, the plaintiffs contend the evidence establishes that Drs. Belton and Rami violated their constitutional rights of due process and equal protection, which were clearly established at the time of the alleged conduct. However, such generalized claims are insufficient to defeat summary judgment on the issue of qualified immunity.

The United States Supreme Court has explained:

> The operation of [the qualified immunity] standard ... depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

**Anderson v. Creighton,** 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987) (citations and footnote omitted).

To defeat summary judgment on the issue of qualified immunity, the plaintiffs were required to show that at the time of Dr. Belton's and Dr. Rami's actions, it was clearly established that their actions were violating the plaintiffs' constitutional rights. In other words, the plaintiffs were required to show that it was clearly

established that a public university's employees violate students' constitutional rights to due process and equal protection by selecting an alternative testing company, refusing to deviate from the exam passage rate stated in the school handbook, and failing to offer re-testing opportunities in accordance with historical practice. When considered in this more particularized sense, the plaintiffs have failed to carry their burden. The plaintiffs have not shown legal authority establishing beyond debate that the particular actions of Drs. Belton and Rami violated their constitutional rights, and their arguments on appeal with regard to this issue are without merit.

The plaintiffs additionally asserted claims for damages under §1983 against Drs. Belton and Rami in their official capacities. In their motion for summary judgment, Drs. Belton and Rami sought the dismissal of those claims, citing well-settled legal authority holding that state officials acting in their official capacities are outside the class of persons subject to liability under §1983. See **Will v. Michigan Department of State Police**, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (reasoning that a suit against a state official in his or her official capacity is actually a suit against the official's office and, as such, is no different than a suit against the state itself). The plaintiffs do not dispute this argument with regard to their claims for damages. However, in opposing the motion for summary judgment, and again on appeal, the plaintiffs argue that two of the plaintiffs may be entitled to injunctive relief – specifically, mandatory injunctions ordering Drs. Belton and Rami to confer nursing degrees on the two plaintiffs. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." **Will**, 109 S.Ct. at 2312 n.10 (internal quotation marks omitted).

The plaintiffs concede that they did not specifically pray for injunctive relief. They argue, however, that under the law they are entitled to all remedies available

12

to them, including a mandatory injunction, if the alleged facts are proven at trial. Notwithstanding the trial court's valid concerns about whether Drs. Belton or Rami could actually confer nursing degrees on the students if ordered to do so, the plaintiffs did not allege that the two plaintiffs have not yet graduated or any other relevant facts that might entitle them to injunctive relief. Thus, the plaintiffs' argument that a claim for injunctive relief arises from their petition is without merit.

Drs. Belton and Rami are entitled to summary judgment dismissing the plaintiffs' constitutional claims against them.

## ABUSE OF RIGHTS CLAIMS

The plaintiffs next contend the trial court erred in dismissing their abuse of rights claims against Drs. Belton and Rami.

"The Abuse of Rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights." **Truschinger v. Pak**, 513 So.2d 1151, 1154 (La. 1987). The doctrine applies only where: (1) the defendant's predominant motive for exercising the right was to cause harm; (2) the defendant had no serious or legitimate interest in exercising the right and exercising the right would bring unnecessary harm to another; (3) the defendant's exercise of the right to refuse is against moral rules, good faith, or elementary fairness; or (4) the defendant exercised the right for a purpose other than that for which it was granted. See **Massachusetts Mutual Life Ins. Co. v. Nails**, 549 So.2d 826, 829-32 (La. 1989); **Truschinger**, 513 So.2d at 1154. Louisiana courts have refused to extend the abuse of rights doctrine beyond cases involving certain contractual and/or fiduciary relationships. **Cottonport Bank v. Garrett**, 2012-0688 (La. App. 1st Cir. 12/21/12), 111 So.3d 431, 435, writ denied, 2013-0165 (La. 3/1/13), 108 So.3d 1182.

In their motion for summary judgment, Drs. Belton and Rami pointed out that the plaintiffs have not alleged and have no evidence proving that Drs. Belton and

Rami abused any of their own personal rights to the plaintiffs' detriment. Drs. Belton and Rami argue that the plaintiffs' complaint is about the exercise of the University's rights, for which individual employees and agents cannot be held liable. The plaintiffs counter that "Dr. Belton abused his right by failing to exercise the rights afforded to him under Southern's grievance procedures." The plaintiffs claim that Dr. Rami, as Dean of the Nursing School, abused her right to determine the required passing score on the exam, which company's exam would be administered, and when additional testing opportunities would be offered.

The abuse of rights doctrine applies to a defendant's exercise of his or her "otherwise judicially protected rights." See **Truschinger**, 513 So.2d at 1154. Drs. Belton and Rami correctly pointed out that the complaints levied against them relate to actions undertaken within the parameters of their employment with the University. In opposing the motion for summary judgment, the plaintiffs failed to present evidence that Dr. Belton or Dr. Rami exercised individually held and judicially protected rights, which could form the basis for an abuse of rights claim. Thus, the plaintiffs failed to carry their burden of proof and Drs. Belton and Rami are entitled to summary judgment dismissing the plaintiffs' abuse of rights claims against them.

## TORT CLAIMS

Finally, the plaintiffs contend the trial court erred in dismissing their tort claims against Drs. Belton and Rami, which included claims of negligence and fraud.

Louisiana courts have adopted a duty-risk analysis to determine whether liability for negligence exists under the particular facts of the case. This requires that the plaintiff prove: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was

14

a legal cause of the plaintiff s injuries; and (5) actual damages. **Brewer v. J.B. Hunt Transport, Inc.,** 2009-1408 (La. 3/16/10), 35 So.3d 230, 240.

Whether a legal duty is owed by one party to another, and the scope of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. **Davis v. Witt,** 2002-3102 (La. 7/2/03), 851 So.2d 1119, 1128. In moving for summary judgment, Drs. Belton and Rami point out that all of their complained of actions were performed as part of their employment with the University. They argue the plaintiffs' claims are merely an "attempt to repackage their [contract] theories based on a student handbook and similar materials into [negligence] claims[.]" Drs. Belton and Rami point out that Louisiana does not recognize the tort theory of educational malpractice and that the plaintiffs cannot prove that either of them breached any duty for which Louisiana law allows recovery.

The plaintiffs do not dispute that they seek to hold Drs. Belton and Rami liable for actions performed as part of their job duties. The plaintiffs contend that as president of the University, Dr. Belton owed them a personal duty to investigate their grievances, hold meetings, and render decisions. The plaintiffs contend that as Dean of the Nursing School, Dr. Rami owed students a duty to refrain from making arbitrary and capricious academic decisions, which the plaintiffs claim she violated by "decid[ing] to fluctuate the passing score of the comprehensive exams," failing to administer exams during the summer of 2016, and failing to formally respond to two of the plaintiffs' formal grievances. The plaintiffs argue that Drs. Belton and Rami can be held personally liable for breaching their employment duties, citing **Canter v. Koehring** Co., 283 So.2d 716 (La. 1973), superseded by statute on other grounds.

15

In **Canter**, the supreme court approved the following test for determining whether an officer, agent, or employee can be held individually liable to a third party damaged by the individual's breach of an employment-imposed duty:

> 1. The principal or employer owes a duty of care to the third person ..., breach of which has caused the damage for which recovery is sought.
>
> 2. This duty is delegated by the principal or employer to the defendant.
>
> 3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances—whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
>
> 4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

**Canter**, 283 So.2d at 721.

We disagree with the plaintiffs' arguments that **Canter** is applicable to the facts of this case. At their essence, the plaintiffs' claims are academic disputes, challenging testing practices and grading policies. However, Louisiana law does not recognize a tort claim for educational malpractice. See **Miller v. Loyola University of New Orleans**, 2002-0158 (La. App. 4th Cir. 9/30/02), 829 So.2d 1057, 1061, writ denied, 2002-3093 (La. 3/14/03), 839 So.2d 38. The Fourth Circuit Court of Appeal explained that a survey of other jurisdictions revealed "there is a persuasive public policy argument against finding a cause of action for educational malpractice that is endorsed by most states." **Miller**, 829 So.2d at 1061. The court further recognized

that "It is not the place of the court system to micro-manage the adequacy of instruction or management at institutions of higher learning, even if it were feasible, which we feel it is not. This is a task best handled by the universities themselves." **Miller**, 829 So.2d at 1061.

In **Guidry v. Our Lady of the Lake Nurse Anesthesia Program Through Our Lady of the Lake College**, 2014-0461 (La. App. 1st Cir. 1/29/15), 170 So.3d 209, 213-14, this court recognized the possibility of a student asserting *a claim against his university for breach of contract*, stating:

> A contract between a private institution and a student confers duties upon both parties, which cannot be arbitrarily disregarded and may be judicially enforced. However, in order to state a claim for breach of contract, the plaintiff must do more than merely allege that a promise was inadequately performed; a plaintiff must point to an *identifiable contractual promise* that the defendant failed to honor. Such a claim does not require an inquiry into the nuances of educational processes and theories, but rather, involves an objective assessment of whether the institution made a good faith effort to perform on its promise. [(Citations omitted, emphasis in original.)]

However, there is no dispute that there is no contract between the plaintiffs and Drs. Belton and Rami.

In **Guidry**, this court further recognized:

> When courts are asked to review the substance of genuinely academic decisions, they should show great respect for the faculty's professional judgment and should not override that judgment unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. Determinations concerning a student's qualifications rest in most cases upon the subjective professional judgment of trained educators, who are the best judges of their student's academic performance and his or her ability to master the required curriculum. As such, school authorities have absolute discretion in determining whether a student has been delinquent in his studies. This is the case especially regarding degree requirements in the health care field, when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession.

**Guidry**, 170 So.3d at 214.

The plaintiffs' claims that the complained of actions by Drs. Belton and Rami support a legally actionable claim of negligence are unfounded. Thus, after thorough

17

review, we find no merit to the plaintiffs' argument that the trial court erred in dismissing their "negligence" claims against Drs. Belton and Rami.

Similarly, we find that the plaintiffs' fraud claims are attempts to recover for educational malpractice.

Louisiana Civil Code article 1953 defines fraud as a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. Civ. Code art. 1953. The elements of the tort of fraud, similar to contractual fraud, are a misrepresentation of material facts made with the intent to deceive where there was reasonable and justifiable reliance by the plaintiff and resulting injury. **Riedel v. Fenasci**, 2018-0539 (La. App. 1st Cir. 12/28/18), 270 So.3d 795, 801. The party asserting a claim of fraud has the burden of proving fraud by a preponderance of the evidence, whether direct or circumstantial. See La. Civ. Code art. 1957; **Dunlap v. Empire Trading Group, LLC**, 2021-0180 (La. App. 1st Cir. 10/18/21), ___ So.3d ___, ___ (2021 WL 4841045, *2); **Markiewicz v. Sun Construction, L.L.C.**, 2019-1590 (La. App. 1st Cir. 9/18/20), 2020 WL 5587265, *5 (unpublished) writ denied, 2020-01196 (La. 1/12/21), 308 So.3d 714.

The plaintiffs claim that issues of fact exist as to whether Dr. Rami engaged in fraud by manipulating the passing score on the final exam and failing to offer re-take opportunities in the summer of 2016. The plaintiffs claim that issues of fact exist as to whether Dr. Belton is liable to them for fraud for governing the Nursing School in such a way as to allow the manipulation of the final exam passing score and the lack of re-take opportunities in the summer of 2016, and for failing to tack action to correct the wrongdoings.

Like their negligence claims, the plaintiffs' fraud claims are essentially claims of academic malpractice. As we have discussed, those claims are not recognized under Louisiana law and cannot be asserted under the guise of fraud.

Furthermore, fraudulent intent or intent to deceive is a necessary element of a fraudulent misrepresentation. **Markiewicz**, 2020 WL 5587265 at *7. Fraud cannot be predicated on a mere mistake or negligence, however gross, and it cannot be predicated on concealing a mistake of which the defendant has no knowledge. **Id**.

After *de novo* review, we find that the plaintiffs failed to produce factual support sufficient to establish the existence of genuine issues of material fact as to any actionable fraudulent acts by Drs. Belton or Rami. Thus, Drs. Belton and Rami are entitled to summary judgment on this issue.

## CONCLUSION

The trial court's judgments granting summary judgment and dismissing the plaintiffs' claims against Dr. Ray L. Belton and Dr. Janet S. Rami are affirmed. Costs of this appeal are assessed to the plaintiffs: Lakeisha Mills, Felicity Mitchell, Roberta Ross, Natasha Graves, Ashley Suel, Kaleen Moses, Kathy Barbay, Jennifer Gaffney, and Adlai Mack Stevenson, II.

**AFFIRMED.**